In re Richard Eugene HUFFMAN, Darlene Joan Huffman, Debtors.

**BANK ONE OF WAPAKONETA, NA, Plaintiff,**

v.

**Richard Eugene HUFFMAN, Defendant.**

Bankruptcy No. 82–02238.
Adv. No. 83–0444.

United States Bankruptcy Court, N.D. Ohio, W.D.

Dec. 21, 1984.

Howard B. Hershman, Toledo, Ohio, for plaintiff.

Randy L. Reeves, Lima, Ohio, for defendant.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon the plaintiff's complaint to have the defendant/debtor's liability for a bank loan declared nondischargeable under § 523(a)(2)(B), based on allegations that the debtor issued a false financial statement upon which the bank relied.

The bank alleged that the balance of debtor's loan obligation was nondischargeable because he made materially false statements in the financial statements and loan applications he submitted to the bank by omitting two debts totaling approximately $30,000.00. The court finds that the creditor did not rely on the loan applications or financial statements but instead it relied on the debtor's history of repayment and substantial salary in deciding whether to grant or reject the loan. Therefore considering the pleadings and evidence adduced at trial, the court finds in favor of the debtor and dismisses plaintiff's complaint with prejudice.

## FACTS

The debt in question arises from the commercial business transactions between the Defendant/Debtor, Richard E. Huffman on behalf of D & D Sportswear, and Plaintiff, Bank One of Wapakoneta, Ohio. D & D Sportswear was a clothing business run as a proprietorship by the debtor and his wife.

The business was begun in 1977 in Arcanum, Darke County, Ohio. When the debtors moved into the Lima area they sought financing from Bank One to continue the business. All loans were negotiated by Richard Eugene Huffman on behalf of D & D Sportswear and Ortho Stiles a branch manager for Bank One.

This case revolves around two debts that Bank One claims were intentionally not disclosed so as to induce them to approve a loan they otherwise would have denied. One debt was a loan from Arcanum National Bank to D & D Sportswear for inventory. The bank's awareness of that loan is discussed below. The other debt was approximately $8,500.00 to Rolland and Evelyn Bowsher.

The Bowsher debt was never listed on any financial statement, loan application or mentioned to Mr. Stiles at anytime. Bank One did not become aware of this debt until the debtors listed it in their bankruptcy. This debt was incurred when the Bowshers who were selling their house to the Huffmans raised the price leaving the Huffmans short of the necessary downpayment. According to Mr. Huffman's testimony, the Bowshers told him not to worry about the debt and that he should pay them when he sold the house. Due to the substantial difference of the traditional bank loan and the contingent nature of the Bowsher's gentleman's agreement the debts will be treated separately.

To avoid confusion the court notes that there are two sets of documents in question which consist of two financial statements and 12 loan applications. Both financial statements were prepared by the debtor. The first in January 1980 included the debt to Arcanum National. The second which was submitted in April of 1981 did not. The 12 loan applications were all filled out by Mr. Stiles on behalf of Bank One. None of the loan applications listed the debt to Arcanum National Bank.

Prior to the approval of the first loan by Bank One, which was in the amount of $1,500.00, Mr. Stiles performed an extensive credit check. Initially the bank re-

quested a financial statement from the debtor. That statement dated January 1980 disclosed a variety of debts owed by Richard Huffman, including an inventory loan with Arcanum National Bank in the approximate amount of $19,000.00. A credit check secured by Bank One through the Lima Credit Bureau disclosed a satisfactory credit rating and reflected the indebtedness to Arcanum National Bank. Mr. Stiles then confirmed the debt with an officer of Arcanum National via a telephone call in the presence of the debtor. Finally some discussion concerning the debt to Arcanum National occurred between the debtor and Mr. Stiles.

Following the credit check Mr. Stiles prepared the loan application and submitted it to Mr. Huffman for his signature. Mr. Stiles did not list the $19,000.00 debt to Arcanum National. The debtor signed the bank's loan application without questioning why Mr. Stiles chose to omit a substantial debt of which he was aware and subsequently the proceeds were disbursed.

Six loans ranging from $1,500.00 to $5,600.00 were made between July 9, 1980 and February 18, 1981 by Bank One to the debtor. None of the loan applications which were all prepared by Mr. Stiles listed the debt to Arcanum National. Mr. Huffman apparently established a satisfactory history of repayment on the loans with Bank One.

According to the bank's policy, which required yearly updates of customers' financial status, the bank requested a current financial statement from the debtor. The new financial statement provided by Mr. Huffman did not list the debt to Arcanum National. Mr. Stiles did orally question the debtor about the Arcanum National debt to which Mr. Huffman replied "it's being taken care of." The debtor's response has become a point of contention because Mr. Stiles claims "it's being taken care of" unequivocally translates to "it's paid", while the debtor's interpretation of the statement is that "the interest is being paid." Mr. Stiles did not commission a credit report or call Arcanum National as he did with the original financial statement.

The debtor received several more loans of various amounts and in October 1981 the debtor applied for a loan in the amount of $20,000.00 to pay off existing indebtedness which had come due and to finance new inventory. The bank commissioned a credit report again from the Lima Credit Bureau but it erroneously showed that there was no outstanding balance on the Arcanum National loan. Since Mr. Huffman's indebtedness had reached $20,000.00 the bank began demanding security for the loan. Additional loans were granted to Mr. Huffman until his indebtedness rose to the sum of $25,000.00 in June of 1982.

The debtors filed bankruptcy on June 3, 1983 under Chapter 7, 11 U.S.C. Bank One contends that it relied on materially false statements in debtor's financial reports and thus the debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B).

## DISCUSSION

The plaintiff, Bank One of Wapakoneta requests a determination of nondischargeability on the debt in issue pursuant to § 523(a)(2)(B) of the United States Bankruptcy Code which provides in pertinent part as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

It is well established that the bank has the burden of proving each element of its claim

under this section by clear and convincing evidence. *In re Duncan*, 11 BCD 374, 375, 35 B.R. 323 (W.D.Ky.1983).

The plaintiff's claim is that a false financial statement was submitted by the debtor concerning two separate debts that were not listed on loan applications signed by the debtor. One debt was a loan from the Arcanum National Bank in the amount of $19,000.00 for the purpose of purchasing inventory. The other debt apparently not evidenced by a writing for approximately $8,500.00 to the Bowshers. The Bowshers extended credit to the Huffmans when the debtors purchased their home. This gentleman's agreement called for the Huffmans to repay the debt when they sold the house. Until the sale of the house the Bowshers informed the Huffmans not to worry about the debt and that they did not have to make any payments.

The court examines each debt separately in light of § 523(a)(2)(B) because they are substantially different in the following aspects:

1. Disclosure—The debtor listed the Arcanum National debt on his original financing statement. While the debt owed to the Bowshers was never disclosed.

2. Current Debt Requiring Current Repayment—
   As previously stated the Bowsher debt did not reduce the Huffmans current ability to pay like the traditional debt owed to Arcanum National which demanded periodic payments.

3. Effect of Bank's Knowledge of the Debt on Obtaining the Loans—
   Mr. Stiles who represented Bank One testified that knowledge of the outstanding Arcanum National debt would have resulted in that loan application being denied whereas he stated that he couldn't say knowledge of the Bowsher debt would have a similar result but only that he would consider it.

Therefore the court begins its discussion with the debt owed to the Arcanum National Bank.

There is no question that the first three elements consisting of a statement in writing, concerning the debtor's financial condition, which is material, are present in regard to the Arcanum National debt. But a creditor must prove all five elements by clear and convincing evidence before a debt is excepted from discharge. *In re Duncan, supra*, at 375, 35 B.R. 323. The critical elements in this debt are reliance and intent.

Throughout the pleadings and at trial the bank was very fond of pointing out that the April 1981 financial statement (which was the 2nd prepared by the debtor) omitted the debt to Arcanum National Bank. Furthermore the bank eagerly introduced each loan application, none of which contained the Arcanum National debt, and all of which were signed by the debtor as being accurate representations of his existing indebtedness. This according to the bank established that it relied on the defendant's false statement. Such selective perception on the part of the bank in light of a $25,000.00 debt is understandable.

The bank views this matter as a clear cut case of nondisclosure. However this case is entirely different from nondisclosure cases in that the bank was aware of the debt of which it claims to have no knowledge. From the outset Mr. Huffman informed Mr. Stiles of his indebtedness to Arcanum National both orally and in a financial statement. Then Mr. Stiles confirmed that debt telephonically with both the bank and the Lima Credit Bureau. Next Mr. Stiles who prepared all 12 loan applications left the Arcanum debt off the loan application which he tendered to Mr. Huffman for his signature. If the loan officer chose not to include this debt of which he had express knowledge it stands to reason that the debtor would be inclined to follow suit.

Conveniently though the bank does not claim to have relied on the first financial statement but instead on the second, submitted in April of 1981. Nothing could be harder for the court to believe. The court finds that the bank has been unable to

carry the burden of showing actual reliance on the April 1981 statement.

Both Mr. Stiles and Mr. Huffman agree that the Arcanum National debt was discussed at the time of the second financial statement. Both men agree Mr. Huffman replied "it's being taken care of." The difference arises in the understanding of that phrase. Mr. Stiles contends that "it's being taken care of" is the equivalent of "it's paid in full." He would have the court believe that part of the conversation concerning a substantial debt (which had been outstanding until the time of that loan application) with a debtor who was clearly so desperate for cash that he needed refinancing to pay the rent as well as to purchase inventory, was as short and sweet as "it's paid." The court finds it unlikely that Mr. Stiles with 28 years of experience would unhesitatingly accept such an answer without even a hint of curiosity as to how the miracle was performed. A more plausible explanation was offered by the debtor.

According to Mr. Huffman after he replied "it's being taken care of", he was asked to clarify the statement. The debtor then went on to explain he was merely paying the interest. This court believes that the testimony of Mr. Huffman accurately reflects the conversation which occurred when the April 1981 financial statement was submitted to the bank. The court believes that the bank was confident that with the debtors substantial salary and his history of repayment that it could advance him credit up to $25,000.00 as long as the facts, as it knew them to exist at the initial meeting, remained unchanged. Mr. Huffman testified that his understanding of his relationship with Bank One after the first conference with Ortho Stiles was that he would be able to establish a $25,000.00 line of credit. The facts indicate that Mr. Huffman's version is correct.

The court believes Mr. Huffman because the bank never conducted another credit check as thorough as the one for the first $1,500.00 loan. That means the bank was satisfied that as long as the debtor didn't add to his debt from other sources that it could rely on his salary and history of repayment to collect the loan even if forced to liquidate the business. Thus as long as the Lima Credit Bureau showed no new loans it didn't care whether the old loan was paid off or not. Clearly the bank was oblivious to the performance of D & D Sportswear which had not shown a profit in any of its four years of existence. In light of the following facts the court is convinced the bank was only interested in debts which reduced the debtor's salary and thus it relied on the first financial statement only to that extent when it granted loans to the debtor.

In addition to finding that the bank did not actually rely on the April 1981 financial statement, the court further finds that it would have been unreasonable to rely on it. To ask the court to accept that the bank honestly believed that a debtor, who was forced to borrow increasingly larger amounts just to stay in business and who had to ask his family to work the store virtually without wages, could mysteriously pay off a $20,000.00 loan overnight is beyond the limits of reasonableness. Furthermore the court is unconvinced that the debtor intended to deceive the bank by omission since he was merely following the loan officer's procedure of consciously deleting a substantial debt.

Having determined that the bank did not rely on the second financial statement which unlike the first did not list the debt to Arcanum, the court now turns to the $8,500.00 debt owed to Roland and Evelyn Bowsher. The bank was not aware of this debt until it was listed on the debtors' bankruptcy schedules.

The bank in its pleading correctly states that "although a creditor must carry the burden of persuasion on all elements of proof, once the creditor has made a *prima facie* showing that the debtor 1) made a materially false representation in writing, and 2) that the creditor relied upon such representation to its detriment, the burden of production, viz., the burden of going forward with evidence to show that the

debtor had no intent to deceive the creditor, shifts to the debtor." *In re Magnusson,* 14 B.R. 662, 669, 8 BCD 708 (Bankr.N.D.N.Y.1981). But as with the first debt the bank must show that it considered and relied on the financial statements submitted by the debtor.

The actual reliance on the financial statement can be established by merely providing "evidence demonstrating that the loan would not have been granted if the lender had received accurate information." *In re Coughlin,* 10 BCD 266, 269, 27 B.R. 632 (Bankr. 9th Cir.1983). This claim is so easy it is almost expected. This is not meant to suggest that loan officers are dishonest but that hindsight is consistently better than foresight. In the present matter the bank officer stated that if he would have had knowledge of the Arcanum National debt he would have rejected the loan application. This court has found that he knew of the debt but made the loan in spite of it. However when questioned under direct examination by bank's counsel about the effect that knowledge of the Bowsher debt would have on the loan making process Mr. Stiles replied he couldn't say it would have resulted in denial of the loan but just that he would have taken the debt into consideration.

Mr. Stiles' refreshingly honest answer reflects that the bank was relying on the debtor's salary and history of repayment. The contingent feature of the debt owed to the Bowshers meant that it did not diminish the debtor's current ability to pay because it did not draw on income. Instead it was only due if the Huffmans house was sold. Furthermore, it did not affect the security interest the bank had in the inventory of the business. Thus Mr. Stiles response indicates that the bank probably would have ignored this debt in the same way it did the other debt. The court finds that the plaintiff has not been able to meet the threshold test to demonstrate reliance and consequently cannot be found to have made a *prima facie* case of intent to deceive against the debtor. Again the bank has failed to show actual reliance and it is unnecessary for the court to determine rea-

sonableness or the intent to deceive. However, assuming arguendo that reasonable reliance was shown the bank would still have to prove by clear and convincing evidence that the debtor intended to deceive the bank. Considering Mr. Huffman's testimony that he never considered the Bowsher obligation a debt but instead thought of it as a moral obligation it is likely that this would be given the same "honest mistake" treatment as the debt in *In re Magnusson, supra* at 670 where it was found that no intention to deceive existed where the debtor misunderstood the scope of the required disclosure. Furthermore the bank never produced any evidence that the agreement with the Bowshers was an enforceable debt. Mr. Huffman's uncontested sparse testimony certainly left many questions about the legitimacy of such a debt. Under this line of reasoning the bank has failed to prove that the debtor made a false statement. Whether the Bowsher debt is considered as being not material, not a debt and therefor not a misstatement, or that there was no intent to deceive, the bank clearly cannot carry its burden of proof.

When considering all of the foregoing facts and law the court is guided by the rule that "exceptions to discharge must be narrowly construed". *In re Magnusson supra* at 667. That policy is followed because "The principal purpose of the bankruptcy laws generally, and the discharge provisions in particular, is to provide the honest but unfortunate debtor with a new opportunity in life and a clear field for future effort." *In re Patch,* 9 BCD 1269, 1271, 24 B.R. 563. Another guideline which was previously mentioned is that the plaintiff must carry the burden to prove each and every element by clear and convincing evidence.

The court finds that the plaintiff did not rely on the second financial statement nor did it rely on the nondisclosure of the Bowsher debt. Furthermore, the court finds that the plaintiff did rely on the debtor's net salary and history of repayment

which were accurately portrayed to the bank. It is therefore,

ORDERED that the plaintiff's complaint be, and it hereby is, dismissed with prejudice. It is further,

ORDERED that defendant's debt to plaintiff be, and it hereby is, discharged.