In re Betty SHORT aka Betty E. Short, Debtor.

**KEMBA COLUMBUS CREDIT UNION, INC., Plaintiff,**

v.

**Betty SHORT, Defendant.**

**Bankruptcy No. 2-87-01848. Adv. No. 2-87-0186.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 6, 1988.

Walter J. Siemer, Siemer & Boynton, Columbus, Ohio, for plaintiff, Kemba Columbus Credit Union, Inc.

William M. Sillins, Columbus, Ohio, for defendant/debtor, Betty Short.

Betty Short, Groveport, Ohio, debtor.

## OPINION AND ORDER ON DIS-CHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court following trial of an adversary proceeding brought by Kemba Columbus Credit Union, Inc. ("Kemba") against the debtor, Betty Short ("Debtor"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(1), and (2)(I). The following opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Statement of Facts*

1. Debtor filed a petition under Chapter 7 of the Bankruptcy Code on April 30, 1987.

2. On May 21, 1984, Debtor signed a Loan Application ("May Application") with Kemba, requesting a loan of $2,000 for the purpose of purchasing a washing machine and dryer, and for home improvements to her kitchen. She affirmed on the Loan Application that she was neither a co-maker nor guarantor on any other loans.

3. On May 21, 1984, Debtor executed a Note and Disclosure Statement (the "May Loan"), pursuant to which she borrowed the sum of $2,000 from Kemba and pledged a 1983 Oldsmobile Cutlass (the "Oldsmobile") as security for her obligations.

4. On March 31, 1986, Debtor completed a Loan Application ("March Application") with Kemba, pursuant to which she applied for a loan in the amount of $2,787.77 for the purpose of paying off a prior loan with Kemba and for a vacation. She indicated on the application that she was a co-maker or guarantor on a loan with BancOhio National Bank ("BancOhio") in the amount of $5,000.

5. On March 31, 1986, Debtor executed a Note and Disclosure Statement ("March Loan") with Kemba under which Kemba lent her the sum of $2,787.77. Kemba accepted Debtor's pledge of the Oldsmobile as security for her obligations.

6. On November 13, 1986, Debtor signed a Loan Application ("November Application") with Kemba, pursuant to which she requested a loan in the amount of $8,375.10 for the stated purpose of paying off obligations to BancOhio and Kemba. Debtor offered the Oldsmobile as collateral for the requested loan. Debtor affirmed on the Loan Application that she was neither a co-maker nor guarantor on any other loan.

7. On November 13, 1986, Debtor signed a Note and Disclosure Statement (the "November Loan"), pursuant to which she borrowed the sum of $8,375.10 from Kemba. She secured her debt by granting Kemba a security interest in the Oldsmobile and a 1987 Plymouth Horizon. As of the filing date of the petition, Debtor owed Kemba approximately $8,800 under the November Loan.

8. At the time Debtor executed the November Loan, she was indebted to Associates Financial Services ("Associates"), County Savings Bank ("County"), and Barclays American Financial ("Barclays"). Debtor knew that she was legally obligated to satisfy her obligations to Associates, County and Barclays, but believed that her ex-husband was required to satisfy the obligations to Associates and County pursuant to a divorce decree entered by the Perry County Common Pleas Court. Debtor understood that she was individually liable on her debt to Barclays at the time she signed the November Application and procured the November Loan.

9. The proceeds from the Barclays loan, on which debtor was solely liable, were given to her ex-husband for payment to the holder of the note on his over-the-road truck tractor. Debtor chose not to list on the November Application, or otherwise advise Kemba, of her obligations to Barclays because her ex-husband was making the installment payments to Barclays. Debtor knew that if she advised Kemba of the

Barclays' loan it would be more difficult for her to obtain a loan from Kemba.

10. Kemba would not have made the November Loan had Debtor apprised Kemba of her obligations to Associates, County or Barclays. Kemba relied on the information given by Debtor in each of her loan applications, but would have issued the May Loan even if it had known about Debtor's other debts.

### III. *Legal Discussion*

Kemba claims that the Debtor intended to, and did, deceive it in procuring the November Loan, as well as the other loans. Kemba argues that the Debtor understood the nature and extent of her obligations to various creditors at the time she signed loan applications with, and obtained loans from, Kemba, but misled Kemba because of an abiding desire to financially assist close family members. Debtor claims, through her counsel, that she did not understand her liability as a co-signer or co-maker. Counsel claims further that Debtor misunderstood the legal effect of her divorce decree—that she believed her former husband was legally obligated to satisfy their joint obligations to Associates and County; thus, she did not list those debts on loan applications delivered to Kemba.

The determination as to whether a debt is non-dischargeable is governed by 11 U.S.C. § 523(a)(2)(B), which states, in relevant part:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

  ....

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

  (i) that is materially false;

  (ii) respecting the debtor's or an insider's financial condition;

  (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

  (iv) that the debtor caused to be made or published with intent to deceive; ....

Each of the elements of 11 U.S.C. § 523(a)(2)(B) must be proven in order for the debt to be deemed non-dischargeable. It is well-established that the plaintiff has the burden of proving each element of its claim by clear and convincing evidence. *In re Duncan,* 35 B.R. 323 (Bankr.W.D.Ky. 1983). In considering all of the relevant facts and the governing legal standards, the Court is guided by the rule that "exceptions to discharge must be narrowly construed." *In re Magnusson,* 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981); *In re Huffman,* 45 B.R. 590, 595 (Bankr.N.D.Ohio 1984). As noted in *Huffman,* that policy is followed because the principles of the Bankruptcy Code generally, and the discharge provisions in particular, are to provide the honest but unfortunate debtor a new opportunity in life and a clear field for future effort.

Turning now to a consideration of each element under 11 U.S.C. § 523(a)(2)(B), the Court finds that the November Application, the one that is central to this Court's determination, was a statement in writing that was materially false respecting the Debtor's financial condition. The Debtor's failure to schedule the Associates' debt, totalling some $11,737; the County debt, totalling some $49,000; and the Barclays' obligation, totalling $800, made the November Application a materially false statement. Although Debtor's divorce decree apparently required her ex-husband to satisfy their joint obligations to Associates and County, Debtor understood that she was not relieved, in a legal sense, as an obligor. Thus, her counsel's claim, and primary defense, that she did not understand her liability as either a co-signer or co-maker is without merit. Further, Debtor was solely liable on the Barclays' loan, but did not disclose it to Kemba despite her clearly understood obligation to Barclays.

It is further clear from the testimony of Kemba's representative at trial, a Mr. Percy, that Kemba relied on the information contained in each of the loan applications. Its reliance was reasonable considering the credit history of the Debtor, the amount of the loans, and her level of income. The Court further finds that the Debtor clearly intended to deceive Kemba in that she

knew disclosure to Kemba of her other debts would negatively impact her ability to obtain a loan. While Debtor is obviously not a malevolent person, she was willing, at least at the times she obtained loans from Kemba, to omit intentionally her other obligations so as to enhance her ability to procure the loan. Debtor's testimony established her ex-husband's needs regarding payments for the purchase and maintenance of his truck, as well as her daughter's needs with respect to an automobile. So, even though her omissions were not motivated by greed or personal profit, but to assist certain family members in their financial lives, she clearly intended to deceive Kemba in the procurement of her loans.

Based upon the foregoing, the Court concludes that Kemba has demonstrated the existence of all the elements required by 11 U.S.C. § 523(a)(2)(B). The Court finds, therefore, Debtor's obligation to Kemba is non-dischargeable. The Court further finds that, according to the uncontradicted testimony of Kemba's representative, Debtor's obligation to Kemba totals $8,800. It is, therefore, the Court's judgment that Plaintiff shall recover the sum of $8,800 from the Defendant/Debtor.

IT IS SO ORDERED.