**In re Dennis Ray DUNCAN, Carolyn Ann Duncan, Debtor.**

**KENTUCKY BANK & TRUST COMPANY, Plaintiff,**

v.

**Dennis Ray DUNCAN, Carolyn Ann Duncan, Defendants.**

**Bankruptcy No. 48200103.**
**Adv. No. 4820022.**

United States Bankruptcy Court,
W.D. Kentucky.

Dec. 21, 1983.

Richard E. Peyton, Madisonville, Ky., for plaintiff.

Stewart B. Elliott, Owensboro, Ky., for debtor/defendants.

Gary Abshier, trustee.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

*Kentucky Bank & Trust Co. v. Duncan* comes to us as part of the "new pattern of farm bankruptcy litigation" which we easily predicted after a period of high interest rates, restricted credit and statewide crop failures.[1] The case appears to be a fairly typical illustration of farm lending practices in rural Kentucky, and its outcome turns on the question of whether there was "reasonable reliance" by the creditor in lending money based upon an admittedly incorrect financial statement.

Dennis Duncan is a farmer in Madisonville, Kentucky. Like many others, he capitalized on the easy credit of the 1970s by expanding his farming operation. He worked with the Green River Production Credit Association, and its loan officer, Norman Herron, during the years 1971–1976.[2] Mr. Herron became a vice president at Kentucky Bank and Trust in 1977, and his financial relationship with Duncan continued. Acting through Herron, the bank made loans to Duncan during the next three years, which were paid in full.

In 1980 Kentucky Bank and Trust extended four farm loans to Duncan: $5,000 on March 5; $15,008 on March 11; $20,008 on April 15; and $5,000 on May 22, 1980. The total debt of $45,016 stood unpaid at the time of Duncan's bankruptcy in March, 1982.

A financial statement and three security agreements were executed during these transactions.[3] Duncan's agricultural financial statement listed assets of $1,742,000 and liabilities of $862,000. In this proceeding he has stipulated to a corrected state-

ment which shows that his liabilities at the time totaled $1,437,962.

The current problem developed after the 1980 crop failure. The collateral was destroyed and the loans remain unpaid. After Duncan filed a Chapter 7 petition this adversary petition was initiated by the bank. It complains that the debtor's financial statement was false, and that he falsely represented to the bank that the security interests granted were first and superior liens.

\* \* \*

Section 523 of the Bankruptcy Code identifies those debts which will be excepted from discharge. Debts for obtaining money, property, services, or an extension, renewal or refinancing of credit through the use of a false financial statement are within the nondischargeable category. This cause of action is comprised of five elements:

(1) a statement in writing,

(2) that is materially false,

(3) respecting the debtor's or an insider's financial condition,

(4) on which the creditor reasonably relied, and

(5) that the debtor caused to be made or published with intent to deceive.[4]

A creditor must prove all five elements by clear and convincing evidence before a debt is excepted from discharge.

The original and corrected financial statements are proof positive of the first three elements. It is the fourth element, reliance, which is the crucial element in this case. Kentucky Bank and Trust must show that it in fact relied on Duncan's statement, and that its reliance was reasonable.[5] Kentucky Bank's witnesses predictably testified that they relied on Duncan's financial statement in approving the 1980 loans.

---

1. *In re Brame,* 23 B.R. 196, 200 (W.D.Ky.1982).

2. Duncan also borrowed from Farmers Home Administration and Peoples Bank & Trust.

3. We do not consider the unsecured March 5th loan because it preceded the financial statement dated March 10, 1980, with which we are immediately concerned.

4. 11 U.S.C. § 523(a)(2)(B).

5. The fourth element of a § 523(a)(2)(B) claim is simply a codification of caselaw under § 17(a)(2) of the Act. H.R.Rep. No. 595, 95th Cong. 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Reliance is a totally subjective phenomenon, not amenable to direct proof. Often circumstantial evidence must suffice. A loan requirement of a full financing statement and security agreements, which was the procedure followed in this case, are some indicia of actual reliance by a lender. Yet the statute requires even further scrutiny; we must test the reliance for reasonableness.

The code does not specify what is meant by "reasonable reliance", but federal courts have given some meaning to this phrase, while trying to avoid second-guessing the lending policies of affected creditors.

Shortly after the enactment of the Code, the Seventh Circuit outlined a stringently pro-creditor standard in *Matter of Garman,* 643 F.2d 1252 (7th Cir.1980). It held that reasonable reliance was lacking when "a creditor's reliance on the financial statement would be *so* unreasonable as not to be actual reliance at all."[6] In other words, virtually *any* reliance is enough.

We derive little assistance from *Garman.* Its tautological quality does not facilitate an analysis of what constitutes "reasonable" reliance, nor is it easily reconcilable with Congress' intent to have courts consider reliance as an independent requirement among the components which, taken together, comprise actionable misrepresentation. *Actual* reliance and *reasonable* reliance are distinguishable phenomena, and we cannot pretend otherwise.

Later courts have departed from the simplicity of the *Garman* standard. Categories of "unreasonable reliance," based on the facts surrounding the commercial transaction, have been judicially fashioned. At least four such classifications have emerged, involving cases where: (1) the creditor knows that the financial information is not accurate; (2) the statement contains obviously inadequate financial information; (3) the creditor's investigation of the statement suggests its falsity or incompleteness; and (4) the creditor fails to verify information on the statement.

Relief is denied in such cases.[7] Creditors who rely on financial statements in these circumstances are considered as having acted "unreasonably," and have not prevailed in § 523(a)(2)(B) challenges.

In the case before us, we conclude that reliance on the statement supplied by Duncan was unreasonable.

Duncan's loan negotiations involved Mr. Herron, a vice-president of the bank. These two were not strangers, but had "had a close working relationship"[8] since 1972. For many years, during much of the growth period of the Duncan farm operation, Herron was a PCA agent. He necessarily was aware of Duncan's *actual* financial profile, because it was his task to know minute details about his client and to maintain an intimate familiarity with the farm business. Consequently, just as Mr. Herron knew that Duncan had PCA "Agri-Facts" available with which to complete the bank financial statement,[9] he knew or must have known that Duncan had understated his liabilities. Having been instrumental in the Duncan farm financing over an extended period, Herron had first-hand knowledge that Duncan had not capitalized the venture personally, but had depended on local lenders. The bank offered no testimony that it attempted to verify the financial information prior to extending the loan.

**6.** *Garman,* supra at p. 1256 (Emphasis original).

**7.** These general categories have been drawn from a reading of numerous cases. See *In re Kreps,* 700 F.2d 372 (7th Cir.1983); *In the matter of Ebbin,* 32 B.R. 936 (S.D.N.Y.1983); *In re Jackson,* 32 B.R. 549 (E.D.Va.1983); *In re Volpe,* 32 B.R. 314 (W.D.N.Y.1983); *In re Ardelean,* 28 B.R. 299 (N.D.Ill.1983); *In the Matter of Patch,* 24 B.R. 563 (D.Md.1982); *Miles Employee Federal Credit Union v. Griffin,* 22 B.R. 821 (S.D.Ohio 1982); *In re Klein,* 20 B.R. 119 (E.D.Pa.1982); *In re Houk,* 17 B.R. 192 (D.S.D. 1982); *In re Magnusson,* 14 B.R. 662 (N.D.N.Y. 1981); *In the Matter of Breen,* 13 B.R. 965 (S.D.Ohio 1981); *In re Smith,* 2. B.R. 276 (E.D. Va.1980).

**8.** Plaintiff's Trial Memorandum, p. 2.

**9.** Id. at p. 3.

From the proof in the case it is clear that Kentucky Bank unreasonably relied on the financial statement in that it had constructive, if not actual, knowledge that the financial information was not accurate, and it ignored its commercial duty to verify that information.

We therefore deny the bank's nondischargeability complaint, and in so doing concur in the observation that:

"A creditor who ignores available information or who fails to seek information from sources that are commonly used, should not be heard to complain about the debtor's fraud. It is the creditor's failure to comport with normal business practices, not the debtor's fraud that is the true cause of the loss." [10]

At the outset we commented that the case at hand is "fairly typical" of farm nondischargeability disputes. There are limits, of course, to our observation and its relevance. Each case, needless to say, is decided on its own facts, and certainly in *Duncan* a predominating factor was the long business relationship between Duncan and Herron.[11] The bank obviously followed Herron's recommendations in making the loan *not* primarily on the strength of the Duncan statement, but on Herron's knowledge of the man and his farm. Indeed, it is likely that it was such knowledge on Herron's part as a former PCA agent, multiplied many times over, from borrower to borrower, that made him a valuable acquisition for the bank in the first place.

The Duncan case is typical in that it points up once more the remarkable homogeneity of the small agricultural community as contrasted with the large and diversified urban society. The commonality of enterprise to be found in such places and a highly developed awareness of the status of individuals within the community makes it possible for lenders to frequently know much more about their borrowers than the printed pages of a financial statement, standing alone, could ever reveal. It is in this limited sense that we find the Duncan case "typical." Nothing in this opinion, however, should be taken to mean that we are about to adopt a policy of holding small-town banks to a higher standard of knowledge than the facts of an individual case may merit.

An order consistent with the foregoing opinion will be entered today.

10. Zaretsky, *The Fraud Exception to Discharge Under the New Bankruptcy Code.* 53 Am.B. L.J. 253, 262 (1979).

11. The history of dealings between the parties is a necessary element in a "reasonable reliance" case; the classic statement on the subject is *Sweet v. Ritter,* 263 F.Supp. 540 (W.D. Va.1967). An earlier opinion of our own Court, finding no reliance on a financial statement, was affirmed by the Sixth Circuit Court of Appeals because "they (the parties) emphasized past dealings rather than the discovery of changed credit circumstances." *In re Young,* BK 66–00085–P, *affirmed,* 698 F.2d 1225 (6th Cir.1982) (unreported).