In re Danny Gerald SANDLIN, f/d/b/a
Danny Sandlin Home Builders,
Inc., Debtor.

HIGH SPRINGS BANK, Plaintiff,

v.

Danny Gerald SANDLIN, f/d/b/a Danny
Sandlin Home Builders, Inc.,
Defendant.

Bankruptcy No. 83–381–BK–J–GP.
Adv. No. 83–385.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 8, 1984.

John F. Roscow, III, Gainesville, Fla., for
plaintiff.

Karen Specie, Keystone Heights, Fla.,
for defendant.

MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy
Judge.

This case was initiated as a complaint
alleging non-dischargeability of a debt un-
der 11 U.S.C. § 523(a)(2)(B). A trial was
concluded on April 4, 1984, and the parties,
at the request of the Court, have submitted
post-trial memoranda.

The plaintiff-creditor must demonstrate,
in order to prevail on this claim, that the
defendant-debtor obtained money from the
plaintiff through the use of a statement in
writing that is materially false respecting
his financial condition on which the plain-
tiff reasonably relied (in providing money
to the defendant) and that the statement
was made with the intent to deceive.

The objectively verifiable facts are undis-
puted. The defendant was, at the time he
is alleged to have made a false financial
statement, the sole shareholder of a corpo-
ration known as Danny Sandlin Home-
builders, Inc. Shortly before applying for
an unsecured personal loan in the principal
amount of $8,000, he deposited into a new
savings account with the plaintiff $19,400.
He had no prior dealings with the plaintiff.
On December 31, 1982, the defendant, in
furtherance of his loan application, exe-
cuted a financial statement in which he
claimed a net worth of $352,180, of which
$144,570 was stock in Danny Sandlin
Homebuilders, Inc. (Another $120,000 of
the net worth reflected on that statement,
which he executed jointly with his wife,
consisted of equity in homestead property.)
The defendant supplemented the financial
statement with a balance sheet and an op-
erating statement for Danny Sandlin
Homebuilders, Inc. Both of those docu-
ments were executed on forms devised by
Mr. Sandlin (according to his testimony,
with the assistance of his accountant); they
were not forms supplied by the Bank. The
corporation balance sheet indicated a total
shareholder equity (comprising mostly ac-
counts receivable) of $144,570. It does not

reflect any short term debt for the corporation although certain other liabilities are indicated. The financial statement itself does not reflect any secondary or contingent liability on Mr. Sandlin's part.

The summary of debts and property which accompanied the debtor's Chapter 7 petition on June 20, 1983, indicates assets with a value of $246,802.63, and debt totaling $515,996.04. The debtor does not argue that his financial picture had changed drastically between the time he filed the documents to obtain the loan and his filing for bankruptcy or that the liabilities of the corporation of which he was guarantor, which make up most of the debt reflected on his petition, were not essentially in place at the earlier time. This Court has ruled and reaffirms that the financial statement which the debtor tendered was materially false. The plaintiff has the difficult burden of establishing each of the remaining three elements, i.e. intent to deceive, and reasonable reliance to the lender's detriment, by clear and convincing evidence.

The Court, having heard the testimony and bearing in mind the totality of the circumstances and the level of sophistication of the lender, concludes that the plaintiff has met its burden with respect to intent to deceive.

We next consider the questions of whether the bank relied on the financial statements as opposed to having extended the loan based principally on other factors, and assuming that such reliance may be found, whether it was reasonable. The courts have developed one doctrine which slightly lightens the burden for many plaintiffs, i.e. the reliance need not be total and to the exclusion of all other factors; partial reliance will suffice. *In re Coughlin*, 27 B.R. 632 (Bkrtcy.App., 1st Cir.1983); *In re Tomei*, 24 B.R. 204 (W.D.N.Y.1982), *Matter of Ebbin*, 32 B.R. 936 (Bkrtcy.S.D.N.Y. 1983). Because reliance is generally in the mind of the loan officer rather than expressed from some objective manifestation it must (much like intent to deceive) be inferred through interpretation of the events and circumstances of the particular case. The defendant argues that the bank relied not on his financial statement but on

the savings account which contained more than enough to cover the loan in event of default. While we do not doubt that the savings account was a factor in extending the loan, the plaintiff has established that the financial statement was given weight as well. We would be less inclined to find substantial reliance had the defendant had a prior course of dealing with the plaintiff. That would support an assumption that it evaluated his creditworthiness on the basis of their mutual history. In this instance, the debtor was a stranger to the ban and it had little to go on. Clearly, any investigation that the bank made or might have made had to be performed on the basis of leads found in the financial statement and accompanying documents. We find that the plaintiff has established that there was sufficient reliance on the financial statement to bring the case within § 523(a)(2)(B).

We must next look to whether the reliance was reasonable. According to the analysis in the recent *In re Duncan*, 35 B.R. 323 (Bkrtcy.W.D.Ky.1983) four classifications of unreasonable reliance have emerged in the case law which *Duncan* enumerates as: (1) the creditor having knowledge that the financial information is not accurate; (2) the statement containing obviously inaccurate financial information; (3) the creditor's investigation of the statement suggesting its falsity or incompleteness; and (4) the creditor failing to verify the information on the statement.

While we believe that this listing of factors accurately reflects the conclusions reached in the numerous cases, we add a caveat: in none of these categories can we take an absolutist approach. If *any* default in any of these categories on the part of a lending institution rendered reliance on a financial statement unreasonable, then virtually no credit would be extended on the basis of *reasonable* reliance on what ultimately turned out to be false information. We do not believe it was Congress' policy in enacting the provision to provide for non-dischargeability only in instances of the most sophisticated form of deception. Rather, we believe that the intention

of the statute, read in conjunction with the cases interpreting it, to permit a finding of reasonable reliance where there is no major default in any of the areas set out in *Duncan.*

Here we find that the bank had no reason to know that the financial information was not accurate. With respect to the second category, while the representation that the debtors' corporation had no short-term liabilities seems unusual, there was no testimony to indicate that such an occurrence might not be routine in the construction contracting industry. The investigation of the creditor did not, according to credible testimony, suggest the falsity or incompleteness of the statement. Indeed, an employee of the plaintiff testified that she obtained a credit bureau report on defendant and his wife and also on the Sandlin corporation and that the report did not contain any seriously unfavorable information. We find that while the bank's efforts to verify the information might have been more extensive, they suffice under the circumstances. We concur with the bank's position that the extent of investigation, while clearly it could have been greater, was reasonable in view of 1) the size of the loan sought, 2) the relatively favorable evaluation of Danny Sandlin Homebuilders, Inc., obtained from the credit bureau, and 3) the illusion of "margin of safety" created by the deposit of funds in the savings account and indeed by the magnitude and surface credibility of the defendant's deception. Further, there was no testimony suggesting that precautions taken by the bank fell below generally accepted standards in the industry.

The defendant cites a number of cases which he maintains are analogous to the one at bar in which the respective courts determined that the lender unreasonably relied on financial statements. We find that generally these cases reflect a failure of the lender to investigate or to take note of obvious inconsistencies in the statement which were far more apparent than in the instant case. In *In re Smith,* 2 B.R. 276 (Bkrtcy.E.D.Va.1980), a mail order lender made no investigation when a would-be borrower who claimed a net worth in excess of $900,000 applied for a high-interest unsecured loan for $18,000. We believe that the burden of inquiry and investigation must fall more heavily on a lender so vulnerable to deception as a mail-order lender at many miles distance from the borrower. In *In re Tashman,* 21 B.R. 738, (D.Vt.1982) there was a clear internal error in the statement, i.e. a valuation of $110,000 assigned to automobiles when $11,000 was the correct figure.

To the extent that published cases impose a more stringent definition of reasonable reliance on lenders, we decline to adopt their approach in that we believe it is contrary to Code policy.

We reject the defendant's argument that the simple occurrence of a businessman claiming a large net worth approaching a new bank for a loan should have been deemed a suspicious circumstance. A bank customer might have many valid reasons for wishing to do business with a new institution, and it is unreasonable to place a bank in the position of having to view such a new customer as waving a "red flag."

We find then that the plaintiff has proved each of the necessary elements for a judgment of non-dischargeability by clear and convincing evidence. A separate judgment for $8,000 together with interest in accordance with this Opinion has been entered this date.