In re William C. BRIDGES, Angie G. Bridges, Debtors.

### GREEN RIVER PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

### William C. BRIDGES, Angie G. Bridges, Defendants.

### Bankruptcy No. 48200190.
### Adv. No. 4830083.

United States Bankruptcy Court, W.D. Kentucky.

July 10, 1985.

Dane Shields, Henderson, Ky., for plaintiff.

Joseph E. Ternes, Henderson, Ky., for defendants.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

This case is yet another example of the economic ruin which has attended the Kentucky farming community over the past five years. The issues here are typical of the pattern of recent farm bankruptcy litigation. The specific question we address today concerns the debtor's use of an admittedly incorrect financial statement to obtain new money and extensions of payment from the Green River Production Credit Association (GRPCA), and the effect, if any, his conduct will have on his right to a bankruptcy discharge.

The debtor, William C. Bridges,[1] has been a farmer for his entire adult life. Prior to his bankruptcy he farmed under lease approximately 750 acres of land. By all accounts Bridges was an extremely able farmer and had a good reputation in his community.

In early 1977, Bridges obtained a loan of $135,000 from GRPCA, secured by liens on Bridges' equipment and on his crops.[2] In 1978 and 1979, GRPCA refinanced this loan. Neither the initial loan nor the refinancings involved any allegedly false financial statements.

In April of 1980, GRPCA again renewed Bridges' loan and provided him with $30,000 in new money. In July and December of the same year GRPCA extended the time for Bridges to repay his obligation. In April of 1981, GRPCA granted Bridges a similar extension of time. In these transactions Bridges misrepresented his net worth by overstating the amount of grain he owned and by failing to disclose $13,000 in outstanding loans.[3]

Due to the generally poor farm economy, disastrous growing weather in the late 1970's and early 1980's and his heavy losses in the farm commodities market be-

---

1. Initially, GRPCA brought this nondischargeability against both William Bridges and his wife. GRPCA now admits that the debtor's wife did not engage in any activities which would make the debt nondischargeable as to her.

2. GRPCA took and perfected security interests in the debtor's crops for the years 1977–1981. In 1981 GRPCA had a second lien on the crops. In all other years the PCA held a first lien.

3. The following omissions and overstatements were complained of by GRPCA:

| LOAN DATE | OMISSION OR OVERSTATEMENT IN THE LOAN APPLICATION FORM | |
|---|---|---|
| 04/22/80 | a) $ 45,000 | (overstatement—18,000 bushels of grain) |
| | b) 13,000 | (omission of 2 notes) |
| | 58,000 | Total |
| 07/30/80 | 49,500 | (overstatement—18,000 bushels of grain) |
| 12/04/80 | 41,456.66 | (overstatement—15,075 bushels of grain) |
| 04/14/81 | 130,800 | (overstatement—43,600 bushels of grain) |

tween 1980 and 1982,[4] Bridges and his wife were forced to file for protection under Chapter 11 of the U.S. Bankruptcy Code in May of 1982. At the time of the petition, Bridges' obligation to GRPCA was nearly $174,000. In March of 1983 the debtors voluntarily converted their case to a Chapter 7 liquidation. After GRPCA sold its security and applied the amount received to the indebtedness, Bridges still owed approximately $86,000. In the course of the bankruptcy proceeding the present action was commenced.

\* \* \* \* \* \*

█ Section 523 of the U.S. Bankruptcy Code outlines those obligations which will be excepted from discharge. Debts which arise from the use of a false financial statement to obtain money, property, services, or an extension, renewal, or refinancing of credit are nondischargeable under the provisions of Section 523(a)(2)(B). For a debt to be found nondischargeable, the creditor seeking to have the debt excepted from discharge must show that:

1). the financial statement was in writing;

2). the statement was materially false;

3). the statement concerned the debtor's financial condition;

4). the creditor reasonably relied upon the statement; and

5). the debtor caused to be made or published the statement with intent to deceive.

Each of these five elements must be proven by clear and convincing evidence before a debt is excepted from discharge.[5]

█ In the present action, the documents in question clearly show that the allegedly

false financial statements were in writing and concerned the debtor's financial condition. It is also clear that Bridges' overstatements of his net worth [6] were material.[7] It is the fourth factor of the nondischargeability analysis, that of reasonable reliance, which forms the critical element of this proceeding.

We have previously considered the issue of reasonable reliance in *In re Duncan,*[8] where it was noted that there were four categories of cases where a creditor's reliance on the debtor's false financial statements was found to be unreasonable: (1) where the creditor knows that the information is not accurate; (2) where the statement contains obviously inadequate financial information; (3) where the creditor's investigation of the statement suggest its falsity or incompleteness; and (4) *where the creditor fails to verify information on the statement.*[9]

In the present case the evidence clearly shows that GRPCA took no steps whatsoever to verify the information contained in the documents submitted by Bridges. At trial and in their posttrial brief, GRPCA summarized its credit verification procedures and the reasons for them in the following manner:

> The Creditor [GRPCA] verified the information regarding the stored grain by putting said information down in writing and giving the Debtor the opportunity to review and inspect the writing. The Creditor considered the Debtor to be an honest man and had no reason to believe that the figures were incorrect. Further, grain storage, in elevators, is not a matter of public record and is not subject

---

**4.** Mr. Bridges lost nearly $95,000 in the commodity markets between 1980 and 1982.

**5.** *In re Duncan,* 35 B.R. 323, 324 (Bkrtcy.W.D. Ky.1983) Exceptions to discharge are strictly construed in favor of the debtor, *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

**6.** See note 3, *Supra.*

**7.** A materially false statement is one which paints a substantially untrue picture of a debtor's financial condition by misrepresenting in-

formation of the type which would normally affect the decision to grant credit. *See In re Winfree,* 34 B.R. 879 (Bkrtcy.M.D.Tenn.1983) *See also In re Denenberg,* 37 B.R. 267 (Bkrtcy.D. Mass.1983).

**8.** 35 B.R. at 323.

**9.** *See* 35 B.R. at 325 n. 7 for a list of cases in these four general categories. *See also In re Weiss,* 42 B.R. 314 (Bkrtcy.E.D.Pa.1984); *Matter of Breen,* 13 B.R. 965 (Bkrtcy.S.D.Ohio 1981); *In re Peterson,* 49 B.R. 1 (Bkrtcy.W.D.Ky.1984).

to verification by review of the public records. In this case the corn was scattered among several elevators and came from four (4) different leasehold farms.... Lastly, grain elevators are not in the practice of divulging information to third parties concerning their business records and patrons without prior authority or subpoenas.[10]

■■■■ By GRPCA's own admission it did not take any independent steps to verify whether Bridges's claims were accurate. In spite of the fact that it had some knowledge of Bridges' troubled financial condition [11], GRPCA took the debtor's word that the figures were accurate. GRPCA's claim that the information needed to verify the figures contained in the various financial statements used by the debtor was difficult to obtain does not eliminate its duty to verify that information. Even if obtaining the grain elevator figures could not be accomplished by the PCA acting alone, it could have reviewed the necessary grain storage records with the debtor's express permission. It is apparent in this case that GRPCA unreasonably relied on the financial statements used by the debtor in that it ignored its commercial duty to verify the information contained in those statements.

■■■■ We therefore deny GRPCA's nondischargeability complaint under Section 523(a)(2). In doing so we point out that nothing in this opinion requires a creditor to make an exhaustive credit check in order to prevail under § 523(a)(2). That section merely requires that a creditor make a commercially reasonable investigation of the information provided by a debtor in order to check its accuracy. It is not commercially reasonable to exert absolutely no effort to verify accuracy of information contained in financial statements. Although we can understand that GRPCA in good faith trusted the word of a well-regarded customer, we must say again, as in the *Duncan* case, that:

"A creditor who ignores available information or who fails to seek information from sources that are commonly used, should not be heard to complain about the debtor's fraud. It is the creditor's failure to comport with normal business practices, not the debtor's fraud that is the true cause of the loss." [12]

Due to our findings on the issue of reasonable reliance we need not consider the question of whether the debtor produced the financial statements with the required intent to deceive.[13]

■■■■ GRPCA also seeks to deny Bridges a discharge on the debt he owes them under the provisions of § 523(a)(6). GRPCA contends that Bridges willfully and maliciously converted its property by selling grain in which it had a security interest, in violation of the security agreement. It is true that the security agreement between the parties does prohibit Bridges from selling the encumbered grain without the written consent of GRPCA. However, GRPCA's representative testified at trial that it was the practice of the PCA to allow farmers to sell encumbered grain and to receive proceeds of those sales without GRPCA's written authorization. It is a well settled principle of bankruptcy law that a debtor who in good faith "converts"

---

**10.** Posttrial Brief of Green River Production Credit Association, at 30.

**11.** In the July 30, 1980 Loan extension request, GRPCA's agent made the following comment on the extension application. "... member (Bridges) continues to want to hold ... [the] '79 grain for a higher price. I can't argue with him as it has paid to date and the situation he is in he needs every penny he can get." While we do not believe that this statement alone indicates that the GRPCA had full knowledge of the debtor's deteriorating financial condition, it does show that even with some knowledge of debtor's

possible financial hardship, GRPCA still did not attempt to verify the information contained in Bridges financial statement.

**12.** *In re Duncan*, 35 B.R. at 326, *quoting, Zaretsky, The Fraud Exception to Discharge Under the New Bankruptcy Code.* 53 AM.B.L.J. 253, 262 (1979).

**13.** Even though we do not judicially consider the issue of the debtor's intent to deceive, we do note that GRPCA presented convincing evidence which strongly suggested a deceptive intent on the part of the debtor.

the property of another by disposing of collateral under the mistaken belief that he has the right to dispose of the collateral "is to be relieved in bankruptcy and is not a malicious wrongdoer".[14] Therefore, the sale of encumbered grain by Bridges does not, in and of itself, constitute a willful and malicious conversion since the debtor had the *actual* consent of GRPCA to sell the encumbered grain. This actual consent means that Bridges had, at the very least, a good faith belief that he could legally sell this grain. The fact that the consent was not given in writing does not change this result.

■ However, GRPCA also argues that even if it gave its permission for Bridges to sell the collateral, it did not give Bridges its permission to use the proceeds of the sale for purposes other than the repayment of their loan. This argument is similar to one advanced by the creditor in the case of *In re Todd*.[15] In that proceeding the creditor objected to discharge under § 523(a)(6), claiming that the debtor had sold property in which the creditor had a valid security interest and did not apply the sale proceeds to the repayment of his obligation. In that case we found that sale of encumbered property and the failure to forward those proceeds to the secured creditor is only "a mere technical conversion" and not within the meaning of § 523(a)(6).[16] Here as in the *Todd* case, the actions of Bridges in connection with the use of the proceeds from the sale of the collateral do not rise to the level of a willful and malicious injury. If this court were to find to the contrary, then in every case where the debtor sold an encumbered asset and failed to repay the secured debt from the proceeds of that sale, we would be forced to find that particular obligation nondischargeable. We are not prepared to expand the provisions of § 523 to that extent. We therefore hold that GRPCA has failed to prove the obli-

gation of William Bridges is nondischargeable under § 523(a)(6).

■ In conclusion, the court notes the harsh result which has been reached in this case. We once again wish to state that we believe that GRPCA at all time during the loan renewal periods relied on the word of a person they had previously regarded as an honest man. Unlike the facts of similar cases where other courts have found that lending institutes have turned a blind eye to the financial condition of a farmer when it extended credit and never actually relied upon the financial statement, we believe that GRPCA acted in good, if ignorant, faith when it entered into the loan arrangements with Bridges in 1980 and 1981. However, the "pure heart and empty head" approach to lending does not satisfy the requirement of reasonable reliance of § 523(a)(2). GRPCA ignored several of the basic standards of commercial lending and did not attempt to verify the information contained in Bridges' financial statements. Section 523(a)(2) requires a creditor to at least make some effort to verify the information contained in a debtor's financial statement as a prerequisite to their bringing a successful nondischargeability complaint. If a creditor fails to reasonably investigate the information contained in a debtor's financial statement, that failure will be prima facie evidence that the creditor's reliance on those financial statements was unreasonable.

An order consistent with the foregoing opinion will be entered today.

---

**14.** *United States Bank of Southgate v. Nelson,* 35 B.R. 766, 776. *See also Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Roberts,* 8 B.R. 291 (W.D.Mo.1981).

**15.** 34 B.R. 633 (Bkrtcy.W.D.Ky.1983).

**16.** *See In re Boren,* 47 B.R. 293 (Bkrtcy.W.D.Ky. 1985); *In re Stephens,* 26 B.R. 389 (Bkrtcy.W.D. Ky.1983).