**In re Robert Lee VANDERGRIFT, Megan Jane Vandergrift, Debtors.**

The CITIZENS NATIONAL BANK, Plaintiff,

v.

**Robert Lee VANDERGRIFT, Defendant.**

Bankruptcy No. 83–A–0669.
Adv. No. 83–0715A.

United States Bankruptcy Court, D. Maryland.

Nov. 28, 1983.

Martin Goozman, Laurel, Md., for plaintiff.

Charles Wood, Laurel, Md., for defendant.

from collecting on any judgment against the Debtor.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

The plaintiff, The Citizens National Bank, seeks a declaration that its claim against the debtor, Robert Lee Vandergrift, is nondischargeable under 11 U.S.C. § 523(a)(2). That section provides as follows:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \*　\*　\*　\*　\*　\*
>
> (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive;

The Bank urges that it is entitled to relief under 2(A) because when Mr. Vandergrift borrowed the funds for a vacation, he had not the slightest intention or ability to repay the debt as it became due. The court finds absolutely no support for this conclusion in the record. The debtor made the first six payments due on a more or less timely basis, and he only stopped his payments after he lost his employment and received a petition to cite him for contempt for nonpayment of child support.

The Bank also offers one of the more novel fraud allegations. The Bank suggests that while the debtor requested the loan for vacation purposes, he used it to pay living expenses. The Bank's counsel argues that the Bank thought that it was dealing with a prosperous person who could squander $2,500.00 on a vacation. Had the Bank realized that its funds would not be applied in such a fashion, the argument runs, the Bank would not have made the loan. The court finds this novel theory to be interesting but unconvincing. The court knows of no basis for a finding of fraud because money requested for frivolous purposes is devoted to living expenses.

The facts in this case are not in dispute, only the conclusions to be drawn from the facts cause this controversy. The debtor had been employed by Golden Auto for some four months prior to making the loan application. Debtor was a buyer whose income was tied to the success of resales. In the five months that he worked for Golden Auto, he earned approximately $5,000.00. His credit application showing $2,000.00 a month net income was obviously false. However, the Bank failed to verify this information with the debtor's employer, even though the employer was a customer of the Bank known to the loan officer, and the Bank had permission to investigate the accuracy of the statements made by the debtor.

What is more important, though, is the fact that the debtor failed to list two significant creditors. These creditors were his former wife, to whom he owed some $3,110.00 in back child support, and the Equitable Trust Company, to which he owed a credit card debt of $1,519.00. The Bank made the loan based upon the debts of the debtor disclosed by him upon his financial statement and those ascertained by the Bank as a result of a credit investigation. The credit investigation did not reflect the child support obligation because that debt was not a commercial account, and the out of state credit card account was also not reflected.

The Bank would not have made the loan had these debts been disclosed, and debtor's explanation for the failure to disclose the debts is incredible. Debtor testified that at the time that he filled out his Financial Statement he simply did not know what his bills were. *In re Hospelhorn,* 5 C.B.C.2d 660, 663 (BC S.D. Ohio 1981) (A statement

made with reckless disregard for its truth satisfied the requirement that the misrepresentation be made intentionally). Debtor also stated that he did not consider child support to be a debt. The court can conceive of no debt more pressing. Indeed, failure to pay such claims can result in incarceration. It would be of extreme importance to any other creditor to know whether or not the borrower might be facing a time when he would be taken off the streets and out of the work force as a result of a contempt finding for failure to pay child support. The debtor stated that he did not list the Equitable account because he thought that the debt would be reflected on the credit report. This explanation is without merit. If this explanation were followed to its logical conclusion, the debtor would not have even bothered to list his other accounts. The request to "list all debts and retail accounts for which you are now, or recently have been, responsible" is unambiguous. Debtor concealed the two creditors. Had these debts been disclosed, the loan would not have been made.

In the recent case of *In re Coughlin*, 27 B.R. 632 (Bkrtcy.App. 1st Cir.1983), the appellate panel examined the elements necessary to support a finding of nondischargeability under § 523 and stated:

In this proceeding, section 523(a)(2)(B) required the bank to prove six elements in order to obtain a finding of nondischargeability: 1) a debt for obtaining money, 2) by use of a statement in writing, 3) that is materially false, 4) respecting the debtor's financial condition, 5) on which the creditor reasonably relied, and 6) published by the debtor with intent to deceive. [Citations omitted] It is not seriously disputed that First National has established elements one through four by clear and convincing evidence. The difficult question is whether the bank established intent to deceive and reasonable reliance. Questions concerning intent and reliance are questions of fact, and, thus, the bankruptcy court's findings on these issues are subject to appellate review under the clearly erroneous standard. *Anderson, Clayton & Co. v. Wing-*

*field (In re Wingfield)*, 15 B.R. 647, 649 (D.Ct.W.D.Okl.1981).

We reject Coughlin's argument that the evidence does not support a finding of intent to deceive. Although a showing of unknowing inaccuracy is not enough to establish intent to deceive, *Genesis Leasing Corp. v. Mangham (In re Mangham)*, 8 B.R. 222, 223 (Bkrtcy.S.D.Ohio 1981), actual knowledge of the falsity of the financial information is not required. *Waterbury Community Federal Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 669 (Bkrtcy.N.D.N.Y.1981). A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement by the debtor. *Id.; Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kimberly (In re Kimberly)*, 13 B.R. 145, 146 (Bkrtcy.S.D. Fla.1981). Courts may assume that debtors intend the natural consequences of their acts. *First Westside National Bank v. Voeller (In re Voeller)*, 14 B.R. 857, 860 (Bkrtcy.D.Mont.1981). Intent to deceive is present when the debtor has "seen the financial statement and the errors were such that he knew or should have known of their falsity." *Modern Distributors, Inc. v. Gray (In re Gray)*, 22 B.R. 676, 9 B.C.D. 661, 663 (Bkrtcy.W.D.Wis.1982); *accord, First Safety Fund National Bank v. Valley (In re Valley)*, 21 B.R. 674, 680 (Bkrtcy.D.Mass.1982).

*Collier* likewise points out, "It must be shown that the debtor's alleged false statement in writing was either knowingly false or made so recklessly as to warrant a finding that he acted fraudulently. The debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." L. King, *Collier on Bankruptcy* 15th ed. § 523.09 at 523.64–65 (1983).

The final element, reasonable reliance, was the subject of the recent opinion of Judge Miller of the United States District Court for the District of Maryland in *Matter of Patch*, 24 B.R. 563 (D.Md.1982). While normal business practice in the indus-

try is to rely upon financial statements, Judge Miller discussed a number of exceptions, none of which apply in the present case. The Bank in the present case did not know that the information listed was not accurate. The statement was sufficient to portray the debtor's financial status. Had the statement been accurate, the Bank could have reasonably determined its course. Nothing in the investigation conducted by the creditor suggested that the statement was false or incomplete other than that the credit report picked up an account that the debtor and his wife shared. The verification of the statement by the creditor was in accordance with its normal practices and in accordance with industry standards. The creditor established that it actually relied upon the materially false statement. *See In re Kreps,* 700 F.2d 372 (7th Cir.1983). The court will enter an order in accordance with this opinion declaring the claim of The Citizens National Bank nondischargeable.

While this was not at issue before the court, debtor testified that he knowingly failed to list the First National Bank of Maryland as a creditor upon his bankruptcy Schedules even though he owed it money at the time of the filing of his petition. The oath attached to the debtor's Schedules must therefore be false. *See* 18 U.S.C. § 152.