In re Estelle V. BROWN, a/k/a Estelle Brown, a/k/a Estelle Vivian Brown, Debtor.

MUNICIPAL CREDIT UNION, Plaintiff,

v.

Estelle V. BROWN, a/k/a Estelle V. Brown, a/k/a Estelle Vivian Brown, Defendant.

Bankruptcy No. 184–41652–353.
Adv. No. 185–0084.

United States Bankruptcy Court, E.D. New York.

Jan. 7, 1986.

Thomas G. Siciliano, Susan Polla Nofi, of counsel, Queens Village, N.Y., for plaintiff.

Gerald Mann, Wayne Jortner, of counsel, New York City, for defendant.

## DECISION AND ORDER

JEROME FELLER, Bankruptcy Judge:

On July 8, 1985, Municipal Credit Union (hereinafter "Plaintiff" or "MCU"), commenced this adversary proceeding against Mrs. Estelle V. Brown, (hereinafter "Debtor" or "Defendant"), in an effort to obtain a determination that the debt owed it by the Debtor was not dischargeable pursuant to Bankruptcy Code § 523(a)(2)(B), 11 U.S.C. § 523(a)(2)(B) and Bankruptcy Code § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(A). The Debtor interposed an answer and a trial was held before the court on November 15, 1985. At the conclusion of the trial, the matter was taken under advisement and the parties were directed to submit proposed findings of fact and conclusions of law. After review of the testimony, documentary evidence, and applicable law, as set forth below in its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, the court concludes that the debt at issue is not dischargeable pursuant to § 523(a)(2)(B).[1]

FACTS

In a pretrial order signed by both counsel for the Plaintiff and for the Defendant, the parties stipulated that the following facts were undisputed. The Debtor, Estelle V. Brown, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 25, 1984 and claimed total unsecured

---

1. In light of the court's determination that the debt at issue is not dischargeable pursuant to § 523(a)(2)(B), it is not necessary to consider Plaintiff's claim that the same debt is nondischargeable under § 523(a)(2)(A).

debts of $17,968.00. Prior thereto, on May 5, 1983, the Debtor completed and submitted a loan application to acquire a $5,000 loan from MCU. During the trial, the parties stipulated that there remained an outstanding unpaid principal balance of $1,942.95 as of the date of the filing of the petition. It is this balance of the May 1983 loan which remains unpaid and which Plaintiff seeks to have determined nondischargeable. The remainder of the facts were established at the trial through testimony and submission of documents.

The loan application completed and submitted by the Debtor on May 5, 1983 was not an accurate statement of the Debtor's financial condition. The loan application (Pl's Ex. # 1) required an applicant to list all outstanding debts. In addition, for each debt, the applicant was required to disclose the creditor's name and address, account number, date of the loan, original debt, present balance, monthly payment and whether or not the debt was past due. Clearly listed as debts required to be disclosed were rent, food, gas and electric, telephone, insurance, alimony, credit union loans, installment loans, credit card debts, as well as other types of debts. Where the word rent appeared, the Debtor listed one month's rent, or $263, but did not otherwise indicate that she owed past due rent payments. She also listed her weekly food expenses, monthly telephone expenses, the outstanding balance of an earlier loan from the Plaintiff, and credit card debts owing to Chase-Visa and Abraham & Strauss. Omitted from the Debtor's application, however, was a loan obtained from Chase Manhattan Bank ("Chase"), in the amount of $3,000 on April 26, 1983, just nine (9) days prior to the time she applied for a loan from the Plaintiff. Misstated on the application was the Debtor's purpose for the loan. In that connection, the Debtor stated on the loan application that her purpose in obtaining the loan was "moving and buying furniture" (Pl's Ex. # 1), but testified that she intended to use the loan to pay her rent arrears (Trial Transcript at 28).

Plaintiff produced Ms. Traviesas, a loan operations manager of MCU as a witness, who testified to the Plaintiff's loan processing procedures. Ms. Traviesas stated that it was the practice of the Plaintiff to confirm the applicant's job and salary, check on the current status of its members within the credit union and obtain a credit report from one of two credit bureaus to verify information provided by an applicant (Trial Transcript at 7–8). In accord with this practice, Plaintiff verified the Debtor's salary and employment and requested and received a credit report from TRW Credit Data (Pl.Ex. # 2). The only outstanding debt indicated on the TRW credit report was an earlier loan from MCU. There were, however, three additional entries on the TRW credit report. Each entry consisted of the name of a lending institution, a date, and the word "inquiry" appearing directly below. In response to the court's request for clarification of these entries on the credit report, the witness testified that whenever an applicant applies for credit (a credit card or an installment loan), the name of the lender or issuer appears on the credit report as an "inquiry," but that such notation does not mean the loan or line of credit was granted (Trial Transcript at 18). On cross-examination, the witness did admit that an "inquiry" could possibly mean a loan had been made (Trial Transcript at 24). The court then questioned the witness as to whether the Plaintiff ever followed up on any of these "inquiry" entries on a credit report. The witness stated that MCU rarely followed up on such entries because the large volume of loans requested and processed prohibited such a policy or practice.

Finally, the witness informed the court that MCU's procedure after verification of the above stated information was to perform a debt burden analysis, comparing the debts listed on the application to the applicant's gross income. If the applicant is not indebted for more than would be allowed by the Plaintiff's internal guidelines, the loan officer is able to approve the loan. In the instant case, Ms. Traviesas stated that as a result of the Debtor's debt burden analysis and the Plaintiff's guidelines in effect at the time, the Debtor was granted

a loan in the amount of $3,400, her maximum eligibility, and not the $5,000 requested. In addition, she stated that the Debtor would not have been granted any further extension of credit in May, 1983 had the Plaintiff known of the Debtor's debt to Chase and rent arrears (Trial Transcript at 16–17).

The Debtor testified that she was indeed in arrears in the payment of her rent and had received an undisclosed loan from Chase at the time she completed and submitted her loan application to the Plaintiff (Trial Transcript at 28). In addition, the Debtor acknowledged that she had borrowed from the Plaintiff four or five times in the past, each time completing and submitting an application (Trial Transcript at 27). When questioned on cross-examination by her attorney, she asserted that the reason she did not include the overdue rent on the application was because she didn't consider it to be a bill one needs to disclose on a loan application and that, in any event, she planned to pay the rent arrears with the loan she hoped to receive from the Plaintiff (Trial Transcript at 28). With regard to the Chase loan, she contended that since the first installment payment was not due until the following month, she also did not consider it a matter required to be disclosed. Significantly, the Debtor admitted that she understood the meaning of each of the debts listed to be disclosed on the loan application. (Trial Transcript at 30).[2]

DISCUSSION

■ The predecessor to § 523(a)(2) of the Bankruptcy Code was § 17(a)(2) of the repealed Bankruptcy Act of 1898, former 11 U.S.C. § 35(a)(2). Since the debts not affected by discharge under the former Bankruptcy Act have been to a large extent incorporated in § 523, courts have generally applied case law construing § 17(a) of the former Bankruptcy Act, former 11 U.S.C. § 35(a), to resolve questions regarding the dischargeability of debts under § 523(a). See, e.g., *National Bank of North America v. Newmark (Matter of Newmark)*, 20 B.R. 842, 852 (Bankr.E.D.N.Y.1982); *Waterbury Community Federal Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 667 (Bankr.N.D.N.Y. 1981); 3 Bkr.L.Ed., Code Commentary and Analysis § 22:67 (1983). Accordingly, courts have continued to narrowly construe exceptions to discharge against the creditor and in favor of the debtor. See e.g., *Matter of Newmark, supra*, 20 B.R. at 853; *In re Magnusson, supra*, 14 B.R. at 667; *Air Traffic Conference of America v. Paley (In re Paley)*, 8 B.R. 466, 468 (Bankr.E.D. N.Y.1981). This construction implements a primary purpose of the bankruptcy laws, providing a fresh start by relieving a debtor from the burden of pre-petition indebtedness. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 710–11, 29 L.Ed.2d 233 (1971). In addition, the objecting creditor has the burden of proof, pursuant to Bankruptcy Rule 4005 and must prove each element of § 523(a)(2), by a showing of clear and convincing evidence before its debt will be excepted from discharge. *Lowell Holding Corp. v. Granovetter (Matter of Granovetter)*, 29 B.R. 631, 639 (Bankr.E.D.N. Y.1983); *Whitney National Bank v. Delano (In re Delano)*, 50 B.R. 613, 617 (Bankr. D.Ma.1985).

Section 523(a)(2)(B) provides as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by—

. . . .

(B) use of a statement in writing—

---

**2.** The court asked the Debtor if she understood the meaning of the word "debt." She stated that the word debt meant, "Like charges or a loan, or a charge card, those are debts." On redirect, the Debtor was asked by the Plaintiff's attorney to read from the loan application the list of debts that appeared therein and were required to be disclosed. After doing so, she stated that she understood the meaning of each item on the list (Trial Transcript at 29–30).

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

It is undisputed that the Debtor is an individual who sought and obtained an extension of credit and in that connection prepared and submitted a written statement relating to her financial condition, i.e., the loan application. The first issue to be resolved is whether or not Defendant's written statement was materially false. The courts have differentiated between a materially false and an incorrect or erroneous statement relating to a person's financial condition. See, e.g. *In re Delano, supra,* 50 B.R. at 617 and cases cited therein. ("A materially false statement is one which paints a substantially untruthful picture of financial condition by misrepresenting information of the type which would normally affect the decision to grant credit."); see also, *In re Magnusson, supra,* 14 B.R. at 668 (Meaning of materially false is a substantial or important untruth).

■ It is clear that the Debtor's failure to include the debt to her landlord and Chase enabled her to present her financial condition in a significantly more advantageous light. Certainly, the existence of these obligations would normally be considered by MCU in extending credit to the Debtor. Uncontroverted testimony was given by the Plaintiff that had the Defendant disclosed these debts, it would not have extended the Debtor any further credit. In fact, the record indicates that based on Plaintiff's loan guidelines, its loan officers would have been prohibited from granting the Debtor's loan application were the Chase loan and rent arrears disclosed. Furthermore, the Debtor misrepresented on her loan application the very purpose for seeking the loan, thereby concealing her dire financial straits. In sum, the Debtor's omission of two (2) important debts from her loan application and affirmatively misstating the purpose of the loan on that application, went far beyond a permissible incorrect or erroneous written statement and constituted a materially false misrepresentation concerning her financial condition.

We next consider the question of whether or not the Plaintiff's reliance on the loan application was reasonable. The requirement that reliance by the creditor on the debtor's written statement be reasonable emerged in the case law under the former Bankruptcy Act, and was thereafter codified in the Bankruptcy Code § 523(a)(2)(B)(iii), as a result of abuses by creditors.[3]

In determining what is reasonable reliance the court in, *Kentucky Bank & Trust Company v. Duncan (In re Duncan),* 35 B.R. 323 (Bankr.W.D.Ky.1983), examined the case law on this issue and distilled from those cases four criteria dispositive of unreasonable reliance by a creditor. They are: (1) where the creditor knew that the financial information was not accurate; (2) where the statement contained obvious inadequate financial information; (3) where the creditor's investigation of the statement suggests its falsity or incompleteness; and (4) where the creditor failed to verify information on the statement. *Id.* at 325.

---

**3.** Section 17(a)(2) of the former Bankruptcy Act only required reliance by the creditor on the written statement of the debtor. As a result, the practice arose of creditors providing the applicants with forms which were inadequate to accurately ascertain the applicant's financial condition and whose main purpose was to provide the creditor with a basis for a false financial statement exception to discharge. H.R. No. 95–595 95th Cong., 1st Sess. 130–131, 364 (1977), reproduced in Appendix 2 Collier on Bankruptcy (15th ed. 1979). This requirement was thereafter modified in the Bankruptcy Code to insure that a materially false financial statement regarding a debtor's financial condition will not prevent the discharge of the debt unless the creditor reasonably relied on the statement. 3 Collier on Bankruptcy, ¶ 523.09[4] at 523–66 (15th ed. 1985).

■ Insofar as a creditor's duty to investigate and verify a written statement for the extension of credit, one commentator aptly observed that, "[a] creditor who ignores available information, or who fails to seek information from sources that are commonly used, should not be heard to complain about the debtor's fraud. It is the creditor's failure to comport with normal business practices, not the debtor's fraud, that is the true cause of the loss." Zaretsky, The Fraud Exception to Discharge Under the New Bankruptcy Code, 53 Am.B.L.J. 253, 262 (1979). This does not mean that creditors are required to make an exhaustive credit check of each and every applicant seeking credit. But, it does require a creditor to make a commercially reasonable investigation of the information that has been supplied by the debtor. *Green River Production Credit Association v. Bridges (In re Bridges)*, 51 B.R. 85, 89 (Bankr.W.D.Ky.1985); *High Springs Bank v. Sandlin (In re Sandlin)*, 39 B.R. 936, 937–38 (Bkrptcy.M.D.Fla.1984); *First Security Bank of Fox Valley v. Ardelean (In re Ardelean)*, 28 B.R. 299, 301 (Bankr. N.D.Ill.E.D.1983).

■ Based on our review of the entire record, including the actual loan application completed by the Debtor, we can only conclude that the Plaintiff's reliance was reasonable. The loan application form used by the Plaintiff clearly and unambiguously required the disclosure of all outstanding debts and loan obligations. If answered truthfully an accurate picture of the Debtor's financial condition would have emerged. A credit report was obtained and reviewed which did not reveal any material inconsistancies with the information supplied by the Debtor on her loan application. Consistent with standard business practices and policies, all information that reasonably could have been checked, was verified by the Plaintiff. The Debtor's unpaid rent obligation is not the kind of debt reported on a credit report. Absent disclosure by the Debtor, the Plaintiff had no way of ascertaining such information. With regard to the undisclosed Chase loan, it would be impractical and unfair to impose a requirement that Plaintiff investigate a mere "inquiry" listed on a credit report in the absence of specific factors triggering an apparent need to investigate requests for credit extensions from other lenders. A person seeking an extension of credit would presumably file an application at several lending institutions and they would all appear as "inquiries." Indeed, not surprisingly, on the Debtor's credit report submitted into evidence (Pl's.Ex. # 2) there were three such entries.

■ Having determined that the Debtor made a materially false written statement concerning her financial condition and the creditor reasonably relied on that statement, the final issue before the court is whether or not the Debtor intended to deceive the Plaintiff. Since it is virtually impossible to obtain direct proof of one's intent to deceive, intent can be inferred from the surrounding circumstances. *Long Island Trust Company v. Rodriguez (In re Rodriguez)*, 29 B.R. 537, 541 (Bankr. E.D.N.Y.1983); *Sparkman v. Janes (In re Janes)*, 51 B.R. 932, 936 (Bankr.D.Kansas 1985). Such intent to deceive will be inferred where a person knowingly or recklessly makes a false representation which a person knows or should know will induce another to make a loan. *In re Rodriguez, supra*, 29 B.R. at 541; accord, *United Leasing Corp. v. Roop*, 48 B.R. 310, 312 (D.C.E.D.Va.1985).

■ The loan application prepared and submitted by Debtor to MCU clearly directed Debtor to list *every* outstanding debt. Nonetheless, Defendant asserts that she failed to disclose her rent arrears and the Chase loan because she did not consider these items to be debts. The Bankruptcy Court for the District of Maryland addressed and rejected a similar contention in, *The Citizens National Bank v. Vandergrift (In re Vandergrift)*, 35 B.R. 76 (Bankr.D.Md.1983). In that case, the debtor had omitted two debts from his financial statement, past due child support payments and an out of state credit card debt. Like the Plaintiff in the instant proceeding, the

creditor did a credit investigation which did not disclose the debts. The debtor's explanation for his failure to disclose the debts was twofold: (1) he did not consider child support a debt; and (2) he thought the credit card debt would appear on the credit report. The court found the debtor's explanation incredible, without merit, and intentionally deceptive because of his failure to list the debts.

This Debtor's explanation for having omitted the Chase loan and her rent arrears from her loan application similarly strains credulity. Moreover, the Debtor's unbelievable explanation for the omissions, coupled with the submission of the loan application only days after obtaining the Chase loan and the glaring misrepresentation as to the purpose of the loan contained in the application, compels the determination that Defendant knowingly and intentionally intended to deceive Plaintiff to obtain the loan.

CONCLUSION

Although Congress was concerned about abuses by creditors of the exception to dischargeability provisions of our bankruptcy laws, it also recognized that there were actual instances of consumer fraud from which creditors were entitled to be protected. H.R. No. 95–595, 95th Cong., 1st Sess. 131 (1977), U.S.Code Cong. & Admin.News 1978, 5787, reproduced in Appendix 2, Collier on Bankruptcy (15th ed. 1979). We think this is just such a case.

Based on the foregoing, the court finds that all of the elements of § 523(a)(2)(B) have been proven by clear and convincing evidence and the debt at issue is accordingly determined to be nondischargeable.

IT IS SO ORDERED.