National Union v. Scott Philo          CV-94-554-L    07/20/95

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>In Re National Union Fire Insurance Company</u>
<u> of Pittsburgh Pa.</u>

        v.                                    #C-94-554-L

<u>Scott Philo Defendant</u>.


**<u>ORDER ON BANKRUPTCY APPEAL</u>**

This matter is on appeal from the United States Bankruptcy Court for the District of New Hampshire.  The appeal is from a final judgment (Yacos, J.) entered in favor of the debtor on September 2, 1994.

The underlying case is an adversary proceeding brought in accordance with Bankruptcy Rules 4007(e) and 7001(6).  28 U.S.C. § 1334 conferred jurisdiction and the matter was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Plaintiff appeals pursuant to Bankruptcy Court Rule 801(a).  Plaintiff is appealing from the court's order granting defendant's motion for a directed verdict.  This appeal was timely filed by the plaintiff on October 3, 1994 in accordance with the Bankruptcy's Court's order granting an extension of time within which to do so.

Both parties agree on the statement of appellate issues presented for review and the standard of review which are

incorporated in this order.

The first issue presented for consideration is whether the trial judge erred in ruling that plaintiff National Union failed to prove actual reliance on the fraudulent financial statements submitted by Scott Philo in bonding his obligations under the Barrick Westwood Limited Partnership and the Barrick Atlanta I Limited Partnership. In reviewing this issue, the bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; In re Earls, 80 B.R. 978 (W.D. Mo. 1987). The bankruptcy court's rulings of law are subject to de novo review. Id.

The second issue is whether the trial judge erred in ruling, in the alternative, that any reliance on said financial statements was not reasonable. Again the standard of review is that the bankruptcy court's findings of fact will not be set aside unless clearly erroneous, and the court's rulings of law are subject to de novo review. Bankruptcy Rule 8013; In re Earls, 80 B.R. at 978.

Finally for consideration is whether the plaintiff is entitled to a ruling that Philo's debt to it is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The standard of review is that the bankruptcy court's findings of fact will not be set aside unless clearly erroneous, and the court's rulings of law

2

are subject to de novo review.  Bankruptcy Rule 8013; In re Earls, 80 B.R. at 978.


STATEMENT OF THE CASE

The plaintiff has appealed from a final judgment of the United States Bankruptcy Court for the District of New Hampshire, in which the court granted the defendant debtor's motion for a directed verdict after the close of plaintiff's case.

Scott L. Philo and his wife Bonnie M. Philo (Philo) filed a Chapter 11 bankruptcy petition on January 28, 1992.  The case was converted to Chapter 7 on August 19, 1992.

The underlying adversary proceeding was originally filed against Philo on May 11, 1992 with a First Amended Complaint filed on June 16, 1992.  National Union sought a ruling that pursuant to 11 U.S.C. § 523 (a)(2)(B) Philo's debt to it in the amount of $174,212.98, secured by a judgment entered in the United States District Court for the Southern District of New York on December 21, 1991, was non-dischargeable.

Philo's obligations to plaintiff National Union arose out of his investment in two limited partnerships known as the Barrick Limited Partnership (Barrick Westwood) and the Barrick Atlanta I Limited Partnership (Barrick Atlanta).

Philo's investments in these limited partnerships came about

3

after he reviewed a prospectus and then filled out a confidential form (financial statement). These documents were provided by a broker, named Margaret, employed by Buttonwood Securities in Salem, New Hampshire.

The first limited partnership that Philo invested in was Barrick Westwood. Philo signed the financial statement pertaining to Barrick Westwood on September 9, 1983.

On November 8, 1983 Philo signed the financial statement pertaining to Barrick Atlanta.

Philo's ownership interest in the two limited partnerships was purchased for the sums of $108,000.00 and $118,000.00 respectively.

Philo executed promissory notes obligating him to pay his obligations thereunder. To obtain additional security for payment of these notes, Barrick Westwood and Barrick Atlanta obtained bonds guaranteeing payment. The bond endorsement was signed on November 29, 1983 by the plaintiff. Philo's name was added by National Union to the two financial guaranty bonds at issue by endorsement following Philo's execution of two separate indemnification and pledge agreements promising to reimburse National Union for any amounts that it paid as a result of default by the defendant.

Philo defaulted in his payments on the two promissory notes,

4

and National Union did, as required, make payments as guaranteed by its agreement.

During the trial before Judge Yacos plaintiff's position, simply stated, was that the bonds were issued by it in reliance upon Philo's financial statements which turned out to be fraudulent.

Plaintiff's counsel called Philo to the stand and he testified that he signed the financial statements in blank. He claimed he was too busy to complete the form. Philo also stated that he instructed Margaret, the broker, to meet with his accountant by agreement to obtain the information to complete the form. The accountant was not called by plaintiff's counsel as a witness which is understandable. As defendant's motion for directed verdict was granted, defendant had no need to produce any witnesses.

In his September 9, 1983 financial statement, Philo represented his adjusted gross income to be as follows:

1981  $75,000.00

1982  $75,000.00

1983 (projected) $150,000.00.

Defendant's federal income tax returns filed jointly with his wife, Bonnie Philo, represented the Philo's joint gross and adjusted gross income for 1981, 1982 and 1983 as follows.

5

1981 gross income  $474.00

1981 adjusted gross income  $474.00

1982 gross income  $27,543.00 adjusted gross income the same.

1983 gross income $86,305.00

1983 adjusted gross income  $86,105.00

Variance between the 1981 financial statement and gross income evidenced by the tax return is $74,526.00.

Variance between the 1982 financial statement and gross income evidenced by the tax return is $47,457.00.

Variance between projected 1983 financial statement and gross income evidenced by the tax return is $78,695.00.  Philo, in his September 9, 1983 balance sheet listed total liabilities of $133,000.00, net worth $1,942.00.

One of the difficulties plaintiff had in presenting its case was its inability to produce a witness from the company in the year 1983 when these transactions took place.  Israel Silverman, an underwriter for National Union, testified relative to making underwriting decisions concerning bonding investors in limited partnerships from 1984 through 1987.  He testified in essence that in underwriting each individual investor, National Union would make sure that each limited partner was capable of repaying his or her obligation in the event of default.  Underwriters

6

would have to rely upon the accuracy of the financial statements submitted by the investors. He further testified that Philo would not have been bondable at the levels of his income as evidenced by federal income tax returns for the years in question.

Defendant's counsel ably brought forth the fact that Silverman did not know what documentation if any, the National Union underwriter had in his or her possession at the time the decision was made to add Philo's name to the list of limited partners whose notes were guaranteed by National Union's bond. There was also a hiatus in the evidence as to the manner or dates on which the completed financial statements were transmitted by the Salem stockbroker to the limited partnerships in Atlanta, Georgia. Judge Yacos was concerned about the fact that National Union had no system to date stamp or otherwise record the date on which the questionnaire forms were received by National Union. Further, National Union did not have the original applications in its files.

### DISCUSSION

Judge Yacos orally granted defendant's motion for a directed verdict from the bench.

The judge stated that § 523(a)(2) requires actual reliance upon the financial statement in question.

7

"The bankruptcy court's findings of fact will not be disturbed unless `clearly erroneous.'" In re Earls, 80 B.R. at 978 (citing In re Martin, 761 F.2d 472, 474 (8th Cir. 1985).

The judge conceded for the present motion, or at least the court would assume, that on a full trial the debtor would be shown to have provided a financial statement that was materially false and that the debtor caused it to be made or published with intent to deceive.

The court went on to state that the exhibits dated September 9, 1983 and November 8, 1983 were both dated prior to the actual action by the plaintiff indicating that this particular investor, on these investments could be added to the list of bonded investors under their transaction and agreement with the partnership. The court added,

> The exhibits, however, do not show any receipt date by the plaintiff itself, and the normal inference that they would have received them prior to the--prior to the action that they took is not in this case and these particular facts justifiable in my judgment, inasmuch as the evidence indicates first that these had to be routed through the broker and the partnership; and, secondly, that by the plaintiff's own testimony, the plaintiff engaging in--engaged in this process and had thousands and thousands of such transactions going through its offices to the point which it could-- couldn't check each and every application for any inconsistencies and so forth because of the sheer volume of investors that it was dealing with at a given time. While, as I say the sequence would normally

8

> infer that the document was received before the action was taken by the financial institution, that inference here on a preponderance of evidence basis I do not think is established, and that is the burden that the plaintiff has to meet in establishing nondischargeability of a debt. That being the case, the motion for directed verdict should be granted and will be granted on that ground alone.

The court went on to add that the document was received before the approval of adding his name to the bonded investor list was done, the plaintiff had it in his possession and relied on it. The reliance was not reasonable in view of the various discrepancies in the financial statements. The bond endorsement was signed on November 29, 1983.

The plaintiff must prove by a preponderance of the evidence that the following elements under §523(a)(2)(B) justified a ruling of non-dischargeability:

(1) A debt for money, or an extension, renewal or refinancing of credit, obtained by (2) Defendant's use of a statement in writing, (3) that is materially false, (4) respecting debtor's or an insider's financial condition, (5) on which statement plaintiff reasonably relied, and (6) which statement debtor caused to be made or published with intent to deceive.

In In re Martz, 88 B.R. 663, 671 (Bankr. E.D.Pa. 1988), the Debtors argued that "they did not `cause' the Statement `to be

made or published' within the meaning of § 523(a)(2)(B)(iv), since the Statement was prepared by some person other than the Debtors."  However, the court generally recognized that a writing is "published" under § 523(a)(2)(B)(iv) if it is either written by the debtor, signed by the debtor, or used and adopted by the debtor.  <u>Id</u>.

"A financial statement is materially false if it contains an important or substantial untruth."  <u>National Union Fire Ins. Co. v. Main (In re Main)</u>, 133 B.R. 746, 751 (Bankr. W.D.Pa. 1991).  "A relevant factor in determining materiality is whether the creditor would have agreed to the transaction had it been aware of the debtor's true financial situation."  <u>Id</u>. (citing <u>Matter of Bogstad</u>, 779 F.2d 370, 375 (7th Cir. 1985)).

An incorrect or erroneous financial statement is not necessarily materially false.  L. King, Collier on Bankruptcy, Par. 523-09 at 523-52 45th ed. Supp. 1962.  A materially false statement is one which paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.  <u>In re Hunt</u>, 30 B.R. 425, 440 (M.D.Tenn. 1983).  "A financial statement which markedly overstates the value of a person's assets, so as to distort his financial picture must be considered materially false."  <u>In re Denenberg</u>, 37 B.R. 267, 271 (Bankr. D.

10

Mass. 1983).

The objecting creditor has the burden of proof, pursuant to Bankruptcy Rule 4005 and must prove each element of § 523(a)(2), by a showing of clear and convincing evidence (note law has been changed to a preponderance of the evidence) before its debt will be excepted from discharge.  In re Brown, 55 B.R. 999, 1002 (Bankr. E.D.N.Y. 1986).

An intent to deceive will be inferred where a person knowingly or recklessly makes a false representation which a person knows or should have known will induce another to make a loan.  Id. at 1004.

"Direct proof of actual reliance is difficult to obtain.  As a result, courts customarily have found that actual reliance may be proven by circumstantial evidence."  In re Myers, 124 B.R. 735, 742 (Bankr. S.D.Ohio 1991).  "[P]artial reliance on a false representation in connection with an extension of credit is sufficient to prevent the discharge of the underlying debt."  In re Myers, supra at 742.

"A directed verdict should not be granted for a defendant `if there is evidence reasonably tending to support the recovery by plaintiff as to any of its theories of liability.'"  Flynn v. Bass Brothers Enters., 744 F.2d 978, 983 (3d Cir. 1984) (citing Dougherty v. Hooker Chemical, 540 F.2d 174, 178 (3d Cir. 1976)).

In determining whether a directed verdict is appropriate, a court must construe the evidence and all inferences therefrom in the light most favorable to the non-moving party. TK-7 Corporation v. Estate of Barbouti, 993 F.2d 722, 723 (10th Cir. 1993).

In the case at hand, the plaintiff did not have to prove its case by clear and convincing evidence. Rather, the standard is a preponderance of the evidence and Judge Yacos astutely applied the not so onerous standard.

This court opines that a directed verdict should not have been granted in this case. Defendant's argument that he signed the financial statement in blank does not militate for a verdict in his favor. See In re Martz, supra.

The debtor was instrumental in providing the information through his accountant and cannot disclaim at the time of trial that he had no knowledge of what his accountant provided to the plaintiff's underwriters. The debtor had to be the primary source of the financial information disclosed to his accountant.

The debtor was not a neophyte in the business world. He was running his own business at the time. It stretches credibility, busy or not, to assume that he never reviewed or had the opportunity to review the completed financial statement especially where he had incurred an initial obligation of

12

$226,000.00.

On the other side of the coin, the plaintiff had the untoward situation, which is understandable over a period of eleven years, of not being able to present at trial an underwriter conversant with the procedures. Silverman was hired in 1984 and could testify as to the custom or habit of his employer for the prior year.

I also disagree with my learned colleague's opinion that sufficient time did not transpire from November 8, 1983 until November 29, 1983 for the documents to wend their way from Salem, New Hampshire to Atlanta, Georgia and then on to plaintiff's underwriting office in Pittsburgh, Pennsylvania a total of twenty-one days.

While it is conceded by the plaintiff that a plethora of transactions went through its offices in 1983, this transaction involved almost a quarter of a million dollars and good business practice would not assume that it was rubber stamped without examining debtor's financial statement. Another consideration as heretofore stated is the eleven years which have transpired from the date of the original bond and the trial in bankruptcy court, and the difficulty over the period of time to have accurate records as date stamping, etc..

It is pristine to this court that the plaintiff reasonably

13

relied on the financial reports in making its decision to bond the debtor. There was a negative differential on the combined 1981, 1982 income tax returns filed by the debtor and the projected 1983 income of $86,305.00 of $185,678.00. The differential in debtor's total liabilities and not his worth is an astronomical $1,809,000.00.

The case is remanded for further proceedings consistent with the opinion of this court to allow the debtor an opportunity to present his case.

July 20, 1995

                                          _____

                                          Martin F. Loughlin
                                          Senior Judge

Charla Bizios Labbe, Esq.
Jeffrey A. Schreiber, Esq.
George Vannah, U.S.
 Bankruptcy Court