# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 10-6026

In re:                                          *
                                                *
David L. Schnuelle; Pamela S. Schnuelle,        *
                                                *
        Debtors.                                *
                                                *
Southeast Nebraska                              *
Cooperative Corporation,                        *    Appeal from the United
                                                *    States Bankruptcy Court
        Plaintiff-Appellee,                     *    for the District of Nebraska
                                                *
        v.                                      *
                                                *
David L. Schnuelle,                             *
                                                *
        Defendant-Appellant,                    *
                                                *
Pamela S. Schnuelle,                            *
                                                *
        Defendant.                              *


Submitted:  December 3, 2010
Filed: January 27, 2011


Before KRESSEL, Chief Judge, SCHERMER, and NAIL, Bankruptcy Judges.


NAIL, Bankruptcy Judge.

David L. Schnuelle appeals the judgment of the bankruptcy court[1] in favor of Southeast Nebraska Cooperative Corporation. We affirm.

BACKGROUND

Southeast Nebraska Cooperative Corporation ("Cooperative") filed a complaint under 11 U.S.C. § 523(a)(2)(A) and (B) to determine the dischargeability of its claim against Debtors David L. Schnuelle and Pamela S. Schnuelle. The adversary proceeding was held in abeyance while the parties litigated the amount of Cooperative's claim in state court, which ultimately entered a judgment in Cooperative's favor and against Debtors for $112,054.50 plus post-judgment interest at the rate of five percent *per annum* from February 13, 2009. At the beginning of the trial in the adversary proceeding, Cooperative voluntarily dismissed its complaint against Debtor Pamela S. Schnuelle.

Debtor David L. Schnuelle ("Debtor") is a cattle and grain farmer. In 2004 and 2005 he borrowed money from Cooperative to put in his crops. Before making each of these loans, Cooperative required two documents: a current financial statement ("balance sheet") and a collateral statement that included information regarding multiple peril crop insurance coverage ("collateral worksheet"). Cooperative's lending policies were designed to ensure it had the first lien position on that year's crop and the borrower had sufficient crop insurance to protect Cooperative's investment.

At trial, Debtor admitted the documents were inaccurate and he had overstated by 25% the amount of crop insurance he had in both 2004 and 2005. The bankruptcy court found Cooperative did not learn of the errors in the 2005 collateral worksheet until June 2005 (after most of the 2005 crop year funds had been advanced by Cooperative) and did not learn of the errors in the 2004 collateral worksheet until Debtor filed his bankruptcy petition. Debtor attempted to explain these errors by saying he had relied on Cooperative's employees to put the correct numbers on the

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

collateral worksheets and he was in a hurry each time he submitted the balance sheets and collateral worksheets and had signed them without reading them.

Debtor understood Cooperative had a first lien position in his 2004 and 2005 corn crops. However, without first discussing the matter with Cooperative or obtaining its consent, Debtor fed an undetermined number of bushels of his 2004 corn crop and at least 14,019 bushels of his 2005 corn crop to his cattle. Debtor did not give Cooperative a replacement lien in other assets for the value of the corn he fed to his cattle.

At Cooperative's request, in early 2005 Debtor signed an affidavit regarding collection actions that had been filed against him. The affidavit contained, *inter alia*, a clause that required Debtor to advise Cooperative of any collection actions that were filed against him in the future. Debtor failed to advise Cooperative of several lawsuits that were commenced against him and several money judgments that were obtained against him after he signed the affidavit.

In June 2005, Debtor sought additional funding from Cooperative. In support of his request, Debtor's other primary lender sent Cooperative a letter regarding certain income Debtor claimed he would receive in the near future and could use to repay Cooperative. Cooperative lent Debtor the money, but Debtor did not receive all of the promised income and was able to repay only a small fraction of the new loan.

The bankruptcy court entered judgment in favor of Cooperative, determining Cooperative's claim against Debtor was excepted from discharge pursuant to § 523(a)(2)(A) and (B). The bankruptcy court denied Debtor's motion to reconsider, and Debtor timely filed a notice of appeal.[2]

---

[2] In his statement of issues on appeal, Debtor identified four issues, two of which we discuss below. However, Debtor did not address the other two issues (*i.e.*, "Whether the Court erred and abused its discretion in its application of the law to the facts" and "Whether the Court erred and abused its discretion by failing to limit the Plaintiff's damages to those damages arising from non-insured crop loss") in his brief or at oral argument, and we do not do so herein.

## STANDARD OF REVIEW

Each of the elements of a claim of nondischargeability under § 523(a) must be shown by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-91 (1991). This means the trier of fact must believe the existence of a fact is more probable than its nonexistence. *Buchholz v. Dewey* (*In re Dewey*), 263 B.R. 258, 263 (Bankr. N.D. Iowa 2001) (citing *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 [n.9] (1997)).

Whether a requisite element of a claim of nondischargeability under § 523(a)(2)(A) or (B) has been satisfied is a factual determination that is reviewed for clear error. *R & R Ready Mix v. Freier* (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010). A finding is clearly erroneous if, after reviewing the entire evidence, the Court is left with the definite and firm conviction that a mistake has been made. *Id.* (quoting therein *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

## DISCUSSION

For a debt to be declared nondischargeable under § 523(a)(2)(A), the creditor must prove:

1. the debtor made a representation [other than regarding his financial condition];

2. the debtor knew the representation was false at the time it was made;

3. the representation was deliberately made for the purpose of deceiving the creditor;

4. the creditor justifiably relied on the representation; and

5. the creditor sustained a loss as the proximate result of the representation having been made.

*Freier*, 604 F.3d at 587.

Debtor argues Cooperative did not prove Debtor intended, by remaining silent regarding his use of part of his 2004 and 2005 corn crops to feed his cattle, to deceive Cooperative.[3]  Debtor focuses primarily on his testimony that he believed before it provided him financing in 2004 and 2005, Cooperative knew he would feed some of the corn to his cattle.  However, the bankruptcy court was not required to accept Debtor's testimony as true.  *See Blodgett v. Comm'r*, 394 F.3d 1030, 1036 (8th Cir. 2005) (citations therein).

> Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.  *See* [*Webster City Production Credit Association v. Simpson* (*In re Simpson*)], 29 B.R. 202, 211 (Bankr. N.D. Ia. 1983).  *Accord [Jordan v. Frye* (*In re Frye*)], 48 B.R. 422, 427 (Bankr. M.D. Ala. 1985); [*Municipal Credit Union v. Brown* (*In re Brown*)], 55 B.R. 999, 1004 (Bankr. E.D.N.Y. 1986).  When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor "cannot overcome [that] inference with an unsupported assertion of honest intent." [*Simpson*], 29 B.R. at 211-12.  The focus is, then, on whether the debtor's actions "appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor."  [*Heinold Commodities & Securities, Inc. v. Hunt* (*In re Hunt*)], 30 B.R. 425, 441 (M.D. Tenn.1983).

*Van Horne*, 823 F.2d at 1287-88.  Debtor's self-serving statement must be weighed against Cooperative's actual lending policies and Debtor's knowledge of these policies, in particular Cooperative's required first lien position on his crops.  Substantial evidence supports the bankruptcy court's findings in this regard.  *Richardson v. Sugg*, 448 F.3d 1046, 1052 (8th Cir. 2006).  Giving due regard to the bankruptcy court's opportunity to assess Debtor's credibility as a witness, Fed.R.Bankr.P. 8013, we cannot say the bankruptcy court's finding that Debtor intended to deceive Cooperative was clearly erroneous.

---

[3]  Silence regarding a material fact may constitute an actionable false representation under § 523(a)(2)(A).  *See Caspers v. Van Horne* (*In re Van Horne*), 823 F.2d 1285, 1288 (8th Cir. 1987) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991)).

Debtor also argues Cooperative failed to prove it actually relied on Debtor's silence regarding his use of the feed. The record, however, adequately supports the bankruptcy court's finding that the amount Cooperative lent Debtor for crop inputs was directly related to the projected dollar value of the crops. Had Debtor not remained silent, and had Cooperative known some of the crop would not be available for sale because Debtor intended to use it for feed, Cooperative would have reduced the amount it was willing to lend accordingly. Under the circumstances, the bankruptcy court's finding that Cooperative relied on Debtor's silence was not clearly erroneous.

Finally, Debtor argues even if Cooperative relied on Debtor's silence, its reliance was not justifiable, because Cooperative knew Debtor owned cattle and would need to feed them.

> Justifiable reliance is an intermediate standard between actual reliance and reasonable reliance. *See* [*Field v. Mans,* 516 U.S. 59, 70-73 (1995)]. Reliance can be justifiable even though an investigation would have revealed the falsity of a representation. *Id.* at 74-75[.] However, a creditor ''cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'' *Id.* at 71 . . . (quoting Restatement (Second) of Torts § 541 cmt. a (1976)).

*Freier*, 604 F.3d at 588. The record demonstrates Cooperative's focus was not on Debtor's cattle, but on determining the value of Debtor's crops, securing a first lien position on those crops, and requiring crop insurance to protect its investment. We decline to hold simply because Cooperative knew Debtor owned cattle, Cooperative was obligated to investigate how Debtor would feed those cattle. Consequently, we cannot say the bankruptcy court's finding that Cooperative's reliance on Debtor's silence was justifiable was clearly erroneous, either.

For a debt to be declared nondischargeable under § 523(a)(2)(B), the creditor must prove:

      1. the debtor made a written statement;

      2. the statement was materially false;

3. the statement was in regard to the debtor's or an insider's financial condition;

4. the creditor reasonably relied on the statement; and

5. the debtor made the statement with an intent to deceive.

11 U.S.C. § 523(a)(2)(B).

Debtor argues Cooperative did not prove Debtor's misstatements in the balance sheets submitted to Cooperative for crop years 2004 and 2005 were material.[4]  A written statement is materially false for the purposes of § 523(a)(2)(B) if it paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information that would normally affect the lender's decision to extend credit. *Premier Bank v. Koester* (*In re Koester*), 437 B.R. 363, 368 (Bankr. E.D. Mo. 2010) (citations therein).  The bankruptcy court found the misstatements in the balance sheets regarding pending liabilities were material because of the size of the omitted liabilities, the nature of those liabilities (*i.e.*, necessary expenditures for fuel and seed), and their impact on the balance sheets' portrayal of Debtor's financial health.  The bankruptcy court noted Cooperative's decision on whether and how much to lend for crop inputs was largely dependent on having sufficient insured collateral to protect its investment and further noted the value of Cooperative's collateral would be reduced by the expenses Debtor incurred in growing the crops.  Cooperative's subsequent decision to advance additional funds in an effort to protect its earlier investments does not render immaterial Debtor's misstatements in the balance sheets and the collateral worksheets.  Under the circumstances, the bankruptcy court's finding of materiality was not clearly erroneous.

---

[4] The affidavit regarding collection actions against Debtor and the letter regarding Debtor's anticipated additional income discussed above were also considered at trial and discussed in the parties' briefs on appeal.  However, because the bankruptcy court found Debtor's misstatements in the balance sheets and the collateral worksheets led to Cooperative's overextending credit by $183,000.00, which exceeds the state court judgment amount, and because Debtor has not appealed the determination of the state court judgment amount, we need not consider the import of the affidavit and the letter.

Debtor also argues Cooperative did not prove it actually relied on the misstatements in the balance sheets and the collateral worksheets for 2004 and 2005. The record, however, supports the bankruptcy court's finding that Cooperative did in fact rely on those misstatements. Cooperative required Debtor to submit a balance sheet and a collateral worksheet each year before it made a crop loan, and the information set forth in the documents was targeted toward ensuring Cooperative's investment in Debtor's crops would be protected. Moreover, Debtor himself acknowledged the importance of the information in the documents to Cooperative in making its lending decisions. Consequently, the bankruptcy court's finding that Cooperative relied on Debtor's misstatements is not clearly erroneous, either.

Debtor also argues even if Cooperative did rely on the misstatements in the balance sheets and the collateral worksheets, its reliance was not reasonable. Under § 523(a)(2)(B), the reasonableness of a creditor's reliance must be determined in light of the totality of the circumstances. *First National Bank of Olathe, Kansas v. Pontow,* 111 F.3d 604, 610 (8th Cir. 1997) (citations therein).

> ''Among other things, a court may consider 'whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.' [*Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 261 (5th Cir. 1993.]" [*Sinclair Oil Corp. v. Jones* (*In re Jones*), 31 F.3d 659, 662 (8th Cir. 1994)].

*Id.* The bankruptcy court could have agreed with Debtor Cooperative was put on notice of Debtor's misstatements by the content of the documents themselves. However, we decline to hold the bankruptcy court was *required* to do so. *See Anderson*, 470 U.S. at 574 (citations therein) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). While the crop yield figures on the collateral worksheet were 25% greater than in prior years, under all the circumstances presented, that fact alone does not necessarily undermine the Court's finding that Cooperative reasonably relied on the documents.

Similarly, while Cooperative may have known Debtor had earlier understated liabilities before it lent him money in 2005, we are not convinced the bankruptcy court erred in failing to conclude the expense understatements alone constituted a red flag that Debtor's projected crop yields and attendant insurance coverage figures were inflated and should not be relied on by Cooperative. Thus, we cannot say the bankruptcy court's finding that Cooperative's reliance on Debtor's misstatements was reasonable is clearly erroneous.

Finally, Debtor argues Cooperative did not prove Debtor intended to deceive Cooperative. As noted by the bankruptcy court, the requisite intent under § 523(a)(2)(B) can be proven from the surrounding circumstances, if it is shown the debtor acted with a reckless indifference to or reckless disregard of the accuracy of financial information submitted to the creditor. *Fairfax State Savings Bank v. McCleary* (*In re McCleary*), 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002); *Koester*, 437 B.R. at 369. Factors to consider include the debtor's intelligence and experience in financial matters and whether there was a clear pattern of purposeful conduct. *McCleary*, 284 B.R. at 888 (citations therein). The bankruptcy court specifically found Debtor acted with reckless indifference or reckless disregard when he provided only estimated, not actual, figures and did not contact his creditors to verify his liabilities. The court also noted the nature and amount of the missing liabilities on the balance sheet were such that Debtor had to know of them. Under the circumstances, we cannot say the bankruptcy court's finding that Debtor acted with the necessary intent is clearly erroneous, either.

## CONCLUSION

Having found no clear error in the bankruptcy court's findings that each element of § 523(a)(2)(A) and (B) had been shown by a preponderance of the evidence, we affirm the bankruptcy court's judgment determining Cooperative's pre-petition claim against Debtor is excepted from discharge under those provisions.

───────────────────────